**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                       :

ABKCO MUSIC, INC., COLGEMS-EMI      :
MUSIC INC., EMI ALGEE MUSIC CORP.,    :
EMI APRIL MUSIC INC., EMI            :
BLACKWOOD MUSIC INC., EMI          :   Case No. 15-cv-04025-ER
CONSORTIUM MUSIC PUBLISHING, INC.  :
d/b/a EMI FULL KEEL MUSIC, EMI      :   ECF Case
CONSORTIUM SONGS, INC. d/b/a EMI    :
LONGITUDE MUSIC, EMI FEIST        :
CATALOG INC., EMI ROBBINS CATALOG  :
INC., EMI UNART CATALOG INC.,      :
JOBETE MUSIC CO., INC. SCREEN-     :
GEMS-EMI MUSIC INC., STONE AGATE   :
MUSIC, STONE DIAMOND MUSIC CORP.,  :
IMAGEM MUSIC LLC, PEER           :
INTERNATIONAL CORPORATION, PSO   :
LIMITED, PEERMUSIC LTD., PEERMUSIC  :
III, LTD., SONGS OF PEER LTD., SPIRIT   :
CATALOG HOLDINGS S.A.R.L., SPIRIT   :
TWO MUSIC, INC., WARNER-         :
TAMERLANE PUBLISHING CORP. and    :
WB MUSIC CORP.,               :
                                         :
      Plaintiffs-Counterclaim Defendants,   :
                                         :
          -against-                 :
                                         :

WILLIAM SAGAN, NORTON LLC, BILL   :   **DEMAND FOR JURY TRIAL**
GRAHAM ARCHIVES, LLC, d/b/a     :
WOLFGANG'S VAULT, BILL GRAHAM   :
ARCHIVES, LLC, d/b/a CONCERT VAULT,  :
BILL GRAHAM ARCHIVES, LLC d/b/a   :
MUSIC VAULT and BILL GRAHAM     :
ARCHIVES, LLC d/b/a DAYTROTTER,   :
                                         :
      Defendants-Counterclaim Plaintiffs.   :
                                         :
-------------------------------------------------------------X
BILL GRAHAM ARCHIVES, LLC, d/b/a   :
WOLFGANG'S VAULT, BILL GRAHAM   :
ARCHIVES, LLC, d/b/a CONCERT VAULT,  :
BILL GRAHAM ARCHIVES, LLC d/b/a   :
MUSIC VAULT and BILL GRAHAM     :

ARCHIVES, LLC d/b/a DAYTROTTER,    :
    :
    Third-Party Plaintiffs,    :
    :
    -against    :
    :
THE NATIONAL MUSIC PUBLISHERS'    :
ASSOCIATION, and DAVID ISRAELITE,    :
    :
    Third-Party Defendants.    :
-----------------------------------------------------------------X

### AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFFS' COMPLAINT OF DEFENDANTS-COUNTERCLAIM PLAINTIFFS WILLIAM SAGAN, NORTON LLC, AND  BILL GRAHAM ARCHIVES, LLC, AND THIRD-PARTY COMPLAINT OF THIRD-PARTY PLAINTIFF BILL GRAHAM ARCHIVES, LLC

Defendants-Counterclaim Plaintiffs William Sagan, Norton LLC ("Norton"), Bill Graham Archives, LLC, d/b/a Wolfgang's Vault, Bill Graham Archives, LLC, d/b/a Concert Vault, Bill Graham Archives, LLC, d/b/a Music Vault, and Bill Graham Archives, LLC, d/b/a Daytrotter (collectively, "BGA" and together with Mr. Sagan and Norton, "Defendants"), for their Answer, Affirmative Defenses, and Counterclaims to the Complaint of Plaintiffs-Counterclaim Defendants ABKCO Music, Inc., Colgems-EMI Music Inc., EMI Algee Music Corp., EMI April Music Inc., EMI Blackwood Music Inc., EMI Consortium Music Publishing, Inc. d/b/a EMI Full Keel Music, EMI Consortium Songs, Inc. d/b/a EMI Longitude Music, EMI Feist Catalog Inc., EMI Robbins Catalog Inc., EMI Unart Catalog Inc., Jobete Music Co., Inc., Screen-Gems-EMI Music Inc., Stone Agate Music, Stone Diamond Music Corp., Imagem Music LLC, Peer International Corporation, PSO Limited, Peermusic Ltd., Peermusic III, Ltd., Songs of Peer, Ltd., Spirit Catalog Holdings S.A.R.L., Spirit Two Music, Inc., Warner-Tamerlane Publishing Corp. and WB Music Corp. (collectively, "Plaintiffs"),  and Bill Graham Archives, LLC, d/b/a Wolfgang's Vault, Bill Graham Archives, LLC, d/b/a Concert Vault, Bill Graham

2

Archives, LLC, d/b/a Music Vault, and Bill Graham Archives, LLC, d/b/a Daytrotter

(collectively, "Third-Party Plaintiffs") for their Third-Party Complaint against the National

Music Publishers' Association (the "NMPA") and David Israelite (collectively, "Third-Party

Defendants"), state that except as expressly admitted, the allegations are denied and further state

and allege as follows:

<u>**ANSWER**</u>

<u>**NATURE OF THE ACTION**</u>

1.      With respect to the allegations contained in paragraph 1 of the Complaint,

Defendants state that the allegations constitute general summaries of Plaintiffs' Complaint and

therefore are allegations to which no responsive pleading is required.  To the extent that the

allegations do require responses, Defendants lack information sufficient to admit or deny the

allegations and, on that basis, deny the allegations.

2.      With respect to the allegations contained in paragraph 2 of the Complaint,

Defendants deny the allegations as to Mr. Sagan and admit that BGA provides concert videos

and audio recordings of various musicians and musical groups through websites referencing

"Wolfgang's Vault," but deny that Defendants exploit any works of such musicians or groups to

the extent that such allegations state or imply that Defendants have engaged in any wrongdoing.

3.      With respect to the allegations contained in paragraph 3 of the Complaint,

Defendants admit that BGA acquired a collection of live radio and video recordings, including

from Bill Graham and others, and that such collection is valuable.

4.      With respect to the allegations contained in paragraph 4 of the Complaint,

Defendants state that the allegations constitute a general summary of Plaintiffs' Complaint and

therefore are allegations to which no responsive pleading is required.  To the extent that the

allegations state or imply that Defendants are taking improper actions with respect to any of Plaintiffs' properly held rights, such allegations are denied.  To the extent that the allegations state or imply conduct by third parties over whom Defendants have no knowledge or control, Defendants lack information sufficient to admit or deny the allegations and, on the basis, deny the allegations.

5.     Defendants deny the allegations contained in paragraph 5 of the Complaint.

6.     Defendants deny the allegations contained in the first, second, fourth and fifth sentences of paragraph 6 of the Complaint.  The allegations contained in the third sentence state a legal conclusion to which no responsive pleading is required.

7.     Defendants deny the allegations contained in paragraph 7 of the Complaint.

8.     Defendants deny the allegations contained in the first sentence of paragraph 8 of the Complaint.  As to the allegations in the second sentence, the allegations are denied as to Mr. Sagan, and as to BGA, BGA admits that it has streamed and sold recorded concert performances but denies that it has done so improperly.

9.     Defendants deny the allegations contained in paragraph 9 of the Complaint.

## JURISDICTION AND VENUE

10.     The allegations contained in in paragraph 10 of the Complaint state a legal conclusion to which no responsive pleading is required.  To the extent that an answer is required, Defendants deny that this action arises under the copyright laws of the United States and deny that Defendants engaged in copyright infringement.

11.     The allegations contained in in paragraph 11 of the Complaint state a legal conclusion to which no responsive pleading is required.  To the extent that an answer is required, Defendants deny that this action arises under the copyright laws of the United States, deny that Defendants engaged in copyright infringement, and deny that more than $75,000 is in controversy in this action.

12.     The allegations contained in in paragraph 12 of the Complaint state a legal conclusion to which no responsive pleading is required.  To the extent that an answer is required, Defendants deny the allegations.

13.     The allegations contained in in paragraph 13 of the Complaint state a legal conclusion to which no responsive pleading is required.  To the extent that an answer is required, Defendants deny the allegations.

## **THE PARTIES**

14.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 14 of the Complaint and, on that basis, deny the allegations.

15.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 15 of the Complaint and, on that basis, deny the allegations.

16.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 16 of the Complaint and, on that basis, deny the allegations.

17.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 17 of the Complaint and, on that basis, deny the allegations.

18.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 18 of the Complaint and, on that basis, deny the allegations.

19.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 19 of the Complaint and, on that basis, deny the allegations.

20.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 20 of the Complaint and, on that basis, deny the allegations.

21.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 21 of the Complaint and, on that basis, deny the allegations.

22.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 22 of the Complaint and, on that basis, deny the allegations.

23.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 23 of the Complaint and, on that basis, deny the allegations.

24.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 24 of the Complaint and, on that basis, deny the allegations.

25.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 25 of the Complaint and, on that basis, deny the allegations.

26.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 26 of the Complaint and, on that basis, deny the allegations.

27.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 27 of the Complaint and, on that basis, deny the allegations.

28.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 28 of the Complaint and, on that basis, deny the allegations.

29.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 29 of the Complaint and, on that basis, deny the allegations.

30.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 30 of the Complaint and, on that basis, deny the allegations.

31.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 31 of the Complaint and, on that basis, deny the allegations.

32.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 32 of the Complaint and, on that basis, deny the allegations.

33.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 33 of the Complaint and, on that basis, deny the allegations.

34.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 34 of the Complaint and, on that basis, deny the allegations.

35.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 35 of the Complaint and, on that basis, deny the allegations.

36.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 36 of the Complaint and, on that basis, deny the allegations.

37.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 37 of the Complaint and, on that basis, deny the allegations.

38.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 38 of the Complaint and, on that basis, deny the allegations.

39.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 39 of the Complaint and, on that basis, deny the allegations.

40.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 40 of the Complaint and, on that basis, deny the allegations.

41.      Defendants lack information sufficient to admit or deny the allegations contained in paragraph 41 of the Complaint and, on that basis, deny the allegations.

42.      Defendants lack information sufficient to admit or deny the allegations contained in paragraph 42 of the Complaint and, on that basis, deny the allegations.

43.      Defendants lack information sufficient to admit or deny the allegations contained in paragraph 43 of the Complaint and, on that basis, deny the allegations.

44.      With respect to the allegations contained in the first and second sentences of paragraph 44 of the Complaint, Defendants lack information sufficient to admit or deny the allegations and, on that basis, deny the allegations.  Defendants deny the allegations in the third and fourth sentences.

45.      Defendants lack information sufficient to admit or deny the allegations in paragraph 45 of the Complaint to the extent they are based on Plaintiffs' alleged information and belief and, on that basis, deny the allegations.  Defendants further state that the phrase "controlling interest" is too vague and ambiguous so as to require a response, and accordingly, the allegation is denied.  Defendants admit that Mr. Sagan is a resident of California.  Defendants deny the remaining allegations.

46.      Defendants lack information sufficient to admit or deny the allegations in paragraph 46 of the Complaint to the extent they are based on Plaintiffs' alleged information and belief and, on that basis, deny the allegations, but Defendants admit that Norton is a limited liability company organized under the laws of the state of Minnesota.

47.      Defendants lack information sufficient to admit or deny the allegations in paragraph 47 of the Complaint to the extent they are based on Plaintiffs' alleged information and belief and, on that basis, deny the allegations, but Defendants admit that BGA is a limited

liability company organized under the laws of Delaware and admit that BGA owns and operates websites under the name of "Wolfgang's Vault," "Concert Vault," and "Music Vault."  Except as expressly admitted, Defendants deny the remaining allegations.

48.     With respect to the allegations contained in paragraph 48 of the Complaint, Defendants deny the allegations as they relate to Mr. Sagan.  Defendants otherwise lack information sufficient to admit or deny the allegations contained in paragraph 48 of the Complaint and, on that basis, deny the allegations, but Defendants admit that certain assets were purchased from the collection of Bill Graham.

49.     Defendants lack information sufficient to admit or deny the allegations contained in paragraph 49 of the Complaint and, on that basis, deny the allegations.

50.     Defendants deny the allegations contained in paragraph 50 of the Complaint.

51.     Defendants deny the allegations contained in paragraph 51 of the Complaint.

52.     Defendants deny the allegations contained in paragraph 52 of the Complaint, but admit that BGA purchased other video and audio recordings.

53.     Defendants deny the allegations contained in paragraph 53 of the Complaint.

54.     Defendants deny the allegations contained in paragraph 54 of the Complaint.

55.     Defendants deny the allegations contained in paragraph 55 of the Complaint as they relate to Mr. Sagan.  Defendants further deny the allegations to the extent that they state or imply that Defendants have engaged in any wrongful conduct in operating the websites owned and operated by BGA.

56.     Defendants deny the allegations contained in paragraph 56 of the Complaint as they relate to Mr. Sagan.  Defendants admit that BGA owns and operates the Concert Vault website at www.concertvault.com, which can be accessible on various mobile devices.

57.     Defendants deny the allegations contained in paragraph 57 of the Complaint as they relate to Mr. Sagan.  Defendants admit that BGA offers streaming of music concerts and downloading of audio recordings through the Concert Vault website at www.concertvault.com.

58.     Defendants deny the allegations contained in paragraph 58 of the Complaint as they relate to Mr. Sagan, but admit, generally, that the content available on the Concert Vault website at www.concertvault.com has expanded since the website was launched.

59.     Defendants deny the allegations contained in paragraph 59 of the Complaint.

60.     Defendants deny the allegations contained in paragraph 60 of the Complaint as they relate to Mr. Sagan.  Defendants further deny the allegations in the first sentence of paragraph 60.  Defendants admit that BGA offers streaming of music concerts and downloading of audio recordings through the Concert Vault website at www.concertvault.com under stated terms of use and membership offerings, that users can browse or search the website for musicians, concerts, or other search terms, and that users can view the recordings on various devices.

61.     Defendants deny the allegations contained in paragraph 61 of the Complaint as they relate to Mr. Sagan.  Defendants admit that BGA offers streaming of music concerts through the Concert Vault website at www.concertvault.com under stated terms of use and membership offerings including memberships for a month, year, and two-year periods.

62.     Defendants deny the allegations contained in paragraph 62 of the Complaint as they relate to Mr. Sagan, but generally admit that the concert recordings are separate files.

63.     Defendants deny the allegations contained in paragraph 63 of the Complaint.

64.     Defendants deny the allegations contained in paragraph 64 of the Complaint as they relate to Mr. Sagan.  Defendants admit that the Concert Vault website has a page regarding "Licensing," but deny the remaining allegations.

65.     Defendants deny the allegations contained in paragraph 65 of the Complaint as they relate to Mr. Sagan.  Defendants further deny the allegations to the extent that the allegations state or imply that Defendants have engaged in unauthorized uses of Plaintiffs' musical works or engaged in any other improper action.  Defendants further state they lack information sufficient to admit or deny any remaining allegations and, on that basis, deny the allegations.

66.     Defendants deny the allegations contained in paragraph 66 of the Complaint as they relate to Mr. Sagan.  Defendants admit that BGA owns and operates the Music Vault website at www.musicvault.com.  Defendants further deny the allegations to the extent that the allegations state or deny that Defendants have engaged in unauthorized uses of Plaintiffs' musical works or engaged in any other improper action.

67.     With respect to the allegations contained in paragraph 67 of the Complaint, Defendants admit that the Music Vault website offers many of the same concert video recordings that are available on Concert Vault.  Defendants deny the remaining allegations.

68.     Defendants deny the allegations contained in paragraph 68 of the Complaint.

69.     Defendants deny the allegations contained in paragraph 69 of the Complaint as they relate to Mr. Sagan.  Defendants further deny the allegations to the extent that the allegations state or imply that Defendants have engaged in unauthorized uses of Plaintiffs' musical works or engaged in any other improper action.  Defendants further state they lack

information sufficient to admit or deny any remaining allegations and, on that basis, deny the allegation

70.     Defendants deny the allegations contained in paragraph 70 of the Complaint as they relate to Mr. Sagan.  Defendants further deny the allegations to the extent that the allegations state or imply that Defendants have engaged in unauthorized uses of Plaintiffs' musical works or engaged in any other improper action.  Defendants further deny the allegations that the offerings on the websites infringe any rights Plaintiffs may have.  Defendants admit that some recordings of video performances are available via YouTube.com.

71.     Defendants deny the allegations contained in paragraph 71 of the Complaint.

72.     Defendants deny the allegations contained in paragraph 72 of the Complaint.

73.     Defendants deny the allegations contained in paragraph 73 of the Complaint as they relate to Mr. Sagan.  Defendants lack information sufficient to admit or deny the allegations to the extent that they are based on Plaintiffs' alleged belief, and on that basis, deny the allegations.  Defendants admit, generally, that some "pre-roll" advertisements may be displayed and Defendants receive a portion of advertising revenue.  Defendants deny the remaining allegations.

74.     Defendants deny the allegations contained in paragraph 74 of the Complaint as they relate to Mr. Sagan.  Defendants further deny the allegations to the extent that the allegations state or imply that Defendants have engaged in unauthorized uses of Plaintiffs' musical works or engaged in any other improper action.  Defendants further state they lack information sufficient to admit or deny any remaining allegations and, on that basis, deny the allegations.

75.     Defendants deny the allegations contained in paragraph 75 of the Complaint.

76.     Defendants lack information sufficient to admit or deny the allegations contained in the first sentence of paragraph 76 of the Complaint and, on that basis, deny the allegations. Defendants deny the remaining allegations.

77.     Defendants deny the allegations contained in paragraph 77 of the Complaint.

78.     Defendants lack information sufficient to admit or deny the allegations contained in the first sentence of paragraph 76 of the Complaint and, on that basis, deny the allegations.

79.     Defendants deny the allegations contained in paragraph 79 of the Complaint.

80.     Defendants lack information sufficient to admit or deny the allegations contained in the first sentence of paragraph 80 of the Complaint and, on that basis, deny the allegations.

81.     Defendants deny the allegations contained in paragraph 81 of the Complaint.

82.     Defendants deny the allegations contained in paragraph 82 of the Complaint.

83.     Defendants deny the allegations contained in paragraph 83 of the Complaint as they relate to Mr. Sagan.  Defendants admit that BGA operates a website under the name "Wolfgang's Vault" located at the domain name www.wolfgangsvault.com.  Defendants further deny the allegations to the extent that the allegations state or imply that Defendants have engaged in unauthorized uses of Plaintiffs' musical works or engaged in any other improper action.

84.     Defendants deny the allegations contained in paragraph 84 of the Complaint as they relate to Mr. Sagan.  Defendants otherwise deny the allegations contained in paragraph 84 of the Complaint and refer the Court to the Wolfgang Vault's website for a rendition of its content.

85.     Defendants deny the allegations contained in paragraph 85 of the Complaint.

86.     Defendants deny the allegations contained in paragraph 86 of the Complaint.

87.     Defendants deny the allegations contained in paragraph 87 of the Complaint as to Mr. Sagan.  Defendants otherwise lack information sufficient to admit or deny the allegations contained in paragraph 87 of the Complaint and, on that basis, deny the allegations, but Defendants admit that BGA lawfully makes available downloads of various concerts for $7.00 via the Wolfgang's Vault website.

88.     Defendants deny the allegations contained in paragraph 88 of the Complaint.

89.     Defendants deny the allegations contained in paragraph 89 of the Complaint as they relate to Mr. Sagan.  Defendants further deny the allegations to the extent that the allegations state or deny that Defendants have engaged in unauthorized uses of Plaintiffs' musical works or engaged in any other improper action.  Defendants further state they lack information sufficient to admit or deny any remaining allegations and, on that basis, deny the allegations.

90.     With respect to the allegations contained in paragraph 90 of the Complaint, Defendants state that the allegations are too vague and ambiguous so as to permit a response and further that the allegations reflect a legal conclusion to which no responsive pleading is required.

91.     With respect to the allegations contained in paragraph 91 of the Complaint, Defendants deny that Mr. Sagan owns the websites.  Defendants deny the remaining allegations, and refer the Court to the Daytrotter and Concert Vault websites for renditions of their content.

92.     Defendants deny the allegations contained in paragraph 92 of the Complaint.

## CLAIM FOR RELIEF

## (COPYRIGHT INFRINGEMENT)

93.     With respect to the allegations contained in paragraph 93 of the Complaint,

Defendants incorporate herein by reference their responses to paragraphs 1 - 92.

94.     Defendants deny the allegations contained in paragraph 94 of the Complaint.

95.     Defendants deny the allegations contained in paragraph 95 of the Complaint.

96.     Defendants deny the allegations contained in paragraph 96 of the Complaint.

97.     Defendants deny the allegations contained in paragraph 97 of the Complaint.

98.     Defendants deny the allegations contained in paragraph 98 of the Complaint.

99.     Defendants deny the allegations contained in paragraph 99 of the Complaint.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

### (Failure to State a Claim for Relief)

1.     Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

### (Innocent Purchaser Defense)

2.     Plaintiffs' claims are barred by the innocent purchaser defense.

### Third Affirmative Defense

### (Fair Use)

3.     Defendants' alleged conduct constitutes fair use.

### Fourth Affirmative Defense

### (Laches)

4.      Plaintiffs' claims are barred, in whole or in party, by laches.

### Fifth Affirmative Defense

### (Waiver)

5.      Plaintiffs' claims are barred, in whole or in part, by waiver.

### Sixth Affirmative Defense

### (Estoppel)

6.      Plaintiffs' claims are barred, in whole or in part, by estoppel.

### Seventh Affirmative Defense

### (Unclean Hands)

7.      Plaintiffs' claims are barred, in whole or in part, by unclean hands.

### Eighth Affirmative Defense

### (Invalidity and Unenforceability of Copyright)

8.      Plaintiffs' claims are barred, in whole or in part, because Plaintiffs' copyrights are invalid and/or unenforceable.

### Ninth Affirmative Defense

### (Abandonment and Forfeiture)

9.      Plaintiffs' claims are barred to the extent that they have forfeited or abandoned the intellectual property at issue.

### Tenth Affirmative Defense

### (License, Consent and Acquiescence)

10.     Plaintiffs' claims are barred, in whole or in part, by the license, consent, and acquiescence to Defendants' use.

### Eleventh Affirmative Defense

16

**(Standing)**

11.     Plaintiffs' claims are barred because Plaintiffs lack standing.

**<u>Twelfth Affirmative Defense</u>**

**(Payment)**

12.     Plaintiffs' claims are barred, in whole or in part, because Defendants have paid to use the rights in connection with the claims at issue.

**<u>Thirteenth Affirmative Defense</u>**

**(Failure to Mitigate Damages)**

13.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have failed to mitigate any damages they claim to have suffered.

**<u>Fourteenth Affirmative Defense</u>**

**(Lack of Subject Matter)**

14.     Plaintiffs' claims are barred for lack of subject matter jurisdiction because they lack valid registrations for the intellectual property rights asserted.

**<u>Fifteenth Affirmative Defense</u>**

**(Failure to Register)**

15.     Plaintiffs' claims are barred, in whole or in part, to the extent that Plaintiffs have not properly or timely registered their works with the U.S. Copyright Office.

**<u>Sixteenth Affirmative Defense</u>**

**(Statute of Limitations)**

16.     Plaintiffs' claims are barred by the applicable statutes of limitations.

## Seventeenth Affirmative Defense

### (Preemption)

17.     Plaintiffs' claims are barred to the extent that they are preempted by the

Copyright Act, 17 U.S.C. § 101 *et seq*.

## Eighteen Affirmative Defense

### (Innocent Intent)

18.     Plaintiffs' claims are barred, in whole or in part, because Defendants' conduct

was in good faith and with non-willful intent.

## Nineteenth Affirmative Defense

### (17 U.S.C. §109 and Exhaustion)

19.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of exhaustion.

## Twentieth Affirmative Defense

### (Misrepresentation)

20.     Plaintiffs' claims are barred, in whole or in part, based on their misrepresentations

and/or misrepresentations of their agents, representations, affiliates and/or third parties.

## Twenty-First Affirmative Defense

### (No Individual Liability)

21.     Plaintiffs' claims against Defendant William Sagan are barred by the corporate

shield doctrine.

## Twenty-Second Affirmative Defense

### (Unconstitutionality)

22.     Plaintiffs' claims are barred, in whole or in part, because statutory damages sought are unconstitutionally excessive and disproportionate to any actual damages that may have been sustained in violation of the Due Process clause.

### Twenty-Third Affirmative Defense

### (Joint Authorship)

23.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of joint authorship.

### Twenty-Fourth Affirmative Defense

### (Joint Ownership)

24.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of joint ownership.

### Twenty-Fifth Affirmative Defense

### (Misuse of Copyright)

25.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of misuse of copyright.

### Twenty-Sixth Affirmative Defense

### (Fraud)

26.     Plaintiffs' claims are barred, in whole or in part, by their fraud.

### Twenty-Seventh Affirmative Defense

### (Non-Infringing Use)

27.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs cannot establish that Defendants' products and services are incapable of substantial non-infringing use.

### Twenty-Eighth Affirmative Defense

### (Failure to Join Indispensable Parties)

28.     Plaintiffs' claims are barred to the extent that Plaintiffs have failed to join necessary and indispensable parties.

### **Twenty-Ninth Affirmative Defense**

### **(First Amendment)**

29.     Plaintiffs' claims are barred to the extent that Defendants' actions and speech are protected by the First Amendment of the Constitution of the United States.

### **ADDITIONAL DEFENSES**

Defendants reserve the right to supplement or amend this Answer, including the right to

assert any other defenses based upon information discovered during discovery or proceedings in

this action or that become available at trial or otherwise in this case.

## COUNTERCLAIMS AND THIRD-PARTY COMPLAINT

## NATURE OF THE ACTION

1.      Plaintiffs look to cast this action as one sounding in bootlegging and copyright infringement, when , at heart, it is nothing more than a transparent money grab by the NMPA—via its member music publishers—designed to torpedo Defendants' business and, ultimately, appropriate Defendants' assets and profits for themselves.

2.      At stake in this litigation are the rights to—and importantly, the rights to monetize—a unique and valuable collection of audio and audiovisual recordings of live music performances, once referred to by the *Wall Street Journal* as "the most important collection of rock memorabilia and recordings ever assembled."

3.      Defendants built this collection from several notable and well-respected sources, including the late Bill Graham—widely recognized as the preeminent concert promoter of his era—the King Biscuit Flower Hour, the Newport Folk and Jazz Festivals, Silver Eagle Distributors, Dawson Sound Productions, the Record Plant recording studio, and the Ash Grove theatre, among others.

4.      Importantly, all of the recordings which make up Defendants' collection were created (and have been exploited) with permission and proper legal consent from the various artists who controlled the copyrights in the musical compositions they performed.

5.      Defendants desired to preserve and celebrate the incredible musical history captured by Bill Graham and others over the past 30-plus years, and in that pursuit, Defendants built a business that would allow music fans everywhere to share-in and appreciate their timeless collection of musical assets.

6.      As their reward, Defendants earned the attention, and ultimately, the jealous ire of the NMPA and the music publisher Plaintiffs in this action, who have now sued Defendants for copyright infringement.  The gist of Plaintiffs' complaint is that Defendants lack the necessary performance rights and mechanical and synchronization licenses to conduct their business, and as a result, Defendants' performance and/or sale of "on-demand streams, digital downloads, CDs, DVDs and newly pressed vinyl recordings" constitutes some "eight hundred acts of infringements" under the Copyright Act.

7.      At the same time, Third-Party Defendants have embarked on a malicious media campaign designed to advance Plaintiffs' legal agenda while tarnishing Defendant BGA's reputation and damaging BGA's business.

8.      Specifically, the NMPA published a press release regarding this action in which its President and CEO, David Israelite, accused BGA of trafficking in "unlicensed music" and described BGA's "business model" as "[s]ystematic copyright infringement."

9.      Third-Party Defendants' press release—which impugns BGA's professional name and reputation by stating or implying that BGA is deceitful, unethical, and without integrity, and by falsely portraying BGA as guilty of a serious crime—was distributed nationally and internationally, causing significant injury to BGA's name, reputation, and financial interests.

10.     Defendants, however, have always acted entirely within their legal rights.

11.     In particular, Defendants possess all of the appropriate performance rights and mechanical and compulsory licenses necessary to conduct their business lawfully, and have at all relevant times remitted royalties as prescribed by law.

12.     Moreover, Defendants do not synchronize Plaintiffs' musical compositions with any visual images.  Indeed, the audiovisual recordings that Defendants make available for access

and/or purchase on their websites in the form of on-demand streams were synchronized many years ago (long before Defendants acquired them) with the permission and legal consent of the artists who controlled the copyrights in the musical compositions they performed.  And in any event, even if the Plaintiffs once had infringement claims sounding in unlicensed synchronization, the statute of limitations ran on those claims years ago.

13.     As such, Defendants now seek a vindication of their rights and their business model, and an end to Plaintiffs' hollow claims and Third-Party Defendants' defamatory accusations.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over the counterclaims and third-party claims pursuant to 28 U.S.C. §1367 as such claims are so related to the claims in the main action that they form part of the same case or controversy under Article III of the United States Constitution.

15.     This Court has personal jurisdiction over each of the Plaintiff-Counterclaim Defendants and Third-Party Defendants by virtue of their transacting, operating, and soliciting business in this District.

16.     Venue in this District is proper under 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

17.     Defendant-Counterclaim Plaintiff William Sagan is an individual and maintains a residence in San Francisco, California.

18.      Defendant-Counterclaim Plaintiff Norton LLC ("Norton") is a limited liability company organized under the laws of the state of Minnesota.

19.     Defendant-Counterclaim Plaintiff/Third-Party Plaintiff Bill Graham Archives,
LLC, d/b/a Wolfgang's Vault, Bill Graham Archives, LLC, d/b/a Concert Vault, Bill Graham
Archives, LLC, d/b/a Music Vault, and Bill Graham Archives, LLC, d/b/a Daytrotter
(collectively, "BGA") is a limited liability company organized under the laws of the state of
Delaware that owns and operates websites under the names "Wolfgang's Vault," "Concert
Vault," "Music Vault," and "Daytrotter."

20.     Upon information and belief, Plaintiff-Counterclaim Defendant ABKCO Music,
Inc. is a corporation organized under the laws of the State of New York, with a principal place of
business in New York, NY.

21.     Upon information and belief, Plaintiff-Counterclaim Defendant Colgems-EMI
Music Inc. is a company organized under the laws of the State of Delaware, with its principal
place of business in New York, NY.

22.     Upon information and belief, Plaintiff-Counterclaim Defendant EMI Algee Music
Corp. is a company organized under the laws of the State of Delaware, with its principal place of
business in New York, NY.

23.     Upon information and belief, Plaintiff-Counterclaim Defendant EMI April Music
Inc. is a company organized under the laws of the State of Connecticut, with its principal place
of business in New York, NY.

24.     Upon information and belief, Plaintiff-Counterclaim Defendant EMI Blackwood
Music Inc. is a company organized under the laws of the State of Connecticut, with its principal
place of business in New York, NY.

25.     Upon information and belief, Plaintiff-Counterclaim Defendant EMI Consortium
Music Publishing, Inc. d/b/a EMI Full Keel Music is a company organized under the laws of the

State of New York, with its principal place of business in New York, NY.

26.     Upon information and belief, Plaintiff-Counterclaim Defendant EMI Consortium Songs, Inc. d/b/a EMI Longitude Music is a company organized under the laws of the State of New York, with its principal place of business in New York, NY.

27.     Upon information and belief, Plaintiff-Counterclaim Defendant EMI Feist Catalog Inc. is a company organized under the laws of the State of New York, with its principal place of business in New York, NY.

28.     Upon information and belief, Plaintiff-Counterclaim Defendant EMI Robbins Catalog Inc. is a company organized under the laws of the State of New York, with its principal place of business in New York, NY.

29.     Upon information and belief, Plaintiff-Counterclaim Defendant EMI Unart Catalog Inc. is a company organized under the laws of the State of New York, with its principal place of business in New York, NY.

30.     Upon information and belief, Plaintiff-Counterclaim Defendant Jobete Music Co., Inc. is a company organized under the laws of the State of Michigan, with its principal place of business in New York, NY.

31.     Upon information and belief, Plaintiff-Counterclaim Defendant Screen-Gems-EMI Music Inc. is a company organized under the laws of the State of Delaware, with its principal place of business in New York.

32.     Upon information and belief, Plaintiff-Counterclaim Defendant Stone Agate Music Corp. is a division of Jobete Music Co., Inc., a company organized under the laws of the State of Michigan, with its principal place of business in New York, NY.

33.     Upon information and belief, Plaintiff-Counterclaim Defendant Stone Diamond

Music Corp. is a company organized under the laws of the State of Michigan, with its principal place of business in New York, NY.

34.     Upon information and belief, Plaintiff-Counterclaim Defendant lmagem Music LLC is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in New York, NY.

35.     Upon information and belief, Plaintiff-Counterclaim Defendant Peer International Corporation is a company organized under the laws of the State of New Jersey, with its principal place of business in New York, NY.

36.     Upon information and belief, Plaintiff-Counterclaim Defendant PSO Limited is a company organized under the laws of the State of New York, with its principal place of business in New York, NY.

37.     Upon information and belief, Plaintiff-Counterclaim Defendant Peermusic Ltd. is a company organized under the laws of the State of New York, with its principal place of business in New York, NY.

38.     Upon information and belief, Plaintiff-Counterclaim Defendant Peermusic III, Ltd. is a company organized under the laws of the State of Delaware, with its principal place of business in New York, NY.

39.     Upon information and belief, Plaintiff-Counterclaim Defendant Songs of Peer, Ltd. is a corporation organized under the laws of the State of Delaware, with its principal place of business in New York, NY.

40.     Upon information and belief, Plaintiff-Counterclaim Defendant Spirit Catalog Holdings S.A.R.L. is a corporation organized under the laws of Luxembourg, with its principal place of business in Luxembourg.

41.      Upon information and belief, Plaintiff-Counterclaim Defendant Spirit Two Music, Inc. is a corporation organized under the laws of New York, with its principal place of business in New York, NY.

42.      Upon information and belief, Plaintiff-Counterclaim Defendant Warner-Tamerlane Publishing Corp. is a corporation organized under the laws of the State of California, with its principal place of business in Los Angeles, California.

43.      Upon information and belief, Plaintiff-Counterclaim Defendant WB Music Corp. is a corporation organized under the laws of the State of California, with its principal place of business in Los Angeles, California.

44.      Upon information and belief, Third-Party Defendant National Music Publishers' Association (the "NMPA") is a trade organization representing the interests of music publishers in the United States, with a principal place of business in Washington, DC.  Upon information and belief, all of the Plaintiff-Counterclaim Defendants are members of the NMPA.

45.      Upon information and belief, Third-Party Defendant David Israelite is an individual and maintains a residence in Washington, DC. Upon information and belief, Israelite is the President and CEO of the NMPA.

## GENERAL ALLEGATIONS

**Defendants' Collection of Musical Assets**

46.      The unique and valuable collection of musical assets at the heart of this litigation owes its origins to Bill Graham—widely regarded as the father of the modern rock concert and the preeminent concert promoter of his era.

47.      In addition to promoting concerts, Bill Graham was also an artist, an author, and a businessman, recording, cataloging, and licensing many of the shows that he staged over his

legendary 30-year career.

48.     In 2002, Defendants had the opportunity to, and did, purchase Bill Graham's inimitable collection of rock and roll memorabilia and recordings for several million dollars.

49.     In the years that followed, Defendants expanded their collection, acquiring additional materials from such esteemed sources as the King Biscuit Flower Hour, the Newport Folk and Jazz Festivals, Silver Eagle Distributors, Dawson Sound Productions, the Record Plant recording studio, and the Ash Grove theatre, among others.

50.     All of the recordings that comprise Defendants' collection were created with permission and proper legal consent from the various artists who controlled the copyrights in the musical compositions they performed, including but not limited to artists such as Eric Burdon, Mick Jagger, The Rolling Stones, Carole King, Ziggy Marley & The Melody Makers, The Romantics, James Taylor, The Allman Brothers Band, Tommy James and the Shondells, Waylon Jenning, Willie Nelson, Smokey Robinson, Pete Townshend, The Who, The Grateful Dead, The Black Crowes, R.E.M., Green Day, Talking Heads, Everlast, The Band, Barenaked Ladies, and Van Morrison.

51.     Defendants expended considerable sums of time and money to acquire and catalogue these timeless assets and to protect their rights, both to preserve and celebrate the tremendous legacies that Bill Graham and others left behind and to make an irreplaceable and invaluable collection of music history available to music fans everywhere.

**Defendants' Business**

52.     Toward that end, Defendants launched the Wolfgang's Vault website (www.wolfgangsvault.com) in or about October 2003.  Wolfgang's Vault offers music fans an opportunity to share in the incredible rock and roll history that Bill Graham created and collected throughout his career.  Defendants subsequently launched other, similar websites including

Concert Vault (www.concertvault.com) and Music Vault (www.musicvault.com), and acquired a controlling stake in Daytrotter (www.daytrotter.com), in order to broaden their offerings and improve their ability to deliver rock music and memorabilia to music fans everywhere.

53.     Specifically, Defendants' websites allow music fans to access and/or purchase audio recordings in the form of on-demand streams, digital downloads, and other more traditional media, like CDs and records.  Defendants' websites also allow music fans to access and/or purchase audiovisual recordings in the form of on-demand streams.

**The NMPA's Plot**

54.     Unfortunately, music fans were not the only ones who took notice of Defendants' business.  Third-Party Defendant NMPA—a trade organization representing over 800 music publishers, including all of the named Plaintiffs in this action—also recognized the unique nature and scope of Defendants' assets along with the potential commercial value associated therewith.

55.     As a result, upon information and belief, the NMPA and Plaintiffs (and their affiliates) deeply regretted not purchasing the rare and valuable assets which comprise Defendants' collection on the open market when they were for sale.

56.     Upon information and belief, the NMPA and Plaintiffs recognized that—now that Defendants had invested the time and money to acquire, catalogue, and conserve the assets, and to build a commercially viable business around them—it would be very expensive to acquire those assets from Defendants in an arm's length business transaction.

57.     Thus, upon information and belief, the NMPA masterminded the present litigation in a transparent effort first to destroy the Defendants' business, and later, to force Defendants to choose between depriving the music-loving public of their inimitable collection, or selling the assets to its member publishers at a steep discount.

**Plaintiffs' Unfounded Claims**

58.     The Plaintiffs' claims in this action sound in several different, equally baseless allegations of copyright infringement.

59.     First, Plaintiffs allege that Defendants have infringed their exclusive right to perform the audio and audiovisual recordings now at issue by making such recordings available for access and/or purchase on their websites in the form of on-demand streams.

60.     Defendants make such audio and audiovisual recordings available for access and/or purchase on their websites in the form of on-demand streams, but, importantly, Defendants possess the necessary performance rights to do so legally.  Indeed, Defendants have (and have at all relevant times had) licenses with the American Society of Composers, Authors and Publishers ("ASCAP"), Broadcast Music, Inc.  ("BMI"), and the Society of European Stage Authors and Composers ("SESAC") which permit them to make the audio recordings now at issue available for access and/or purchase in the form of on-demand streams.

61.     Plaintiffs also allege that Defendants have infringed their exclusive rights to reproduce and distribute (1) the audio recordings now at issue by making such recordings available for access and/or purchase on their websites in the form of on-demand streams, digital downloads, and other more traditional media, like CDs and records, and (2) the audiovisual recordings now at issue by making such recordings available for access and/or purchase on their websites in the form of on-demand streams.

62.     Defendants make (1) such audio recordings available for access and/or purchase on their websites in the form of on-demand streams, digital downloads, and other more traditional media, or (2) such audiovisual recordings available for access and/or purchase on their websites in the form of on-demand streams, but, importantly, Defendants possess the necessary mechanical and compulsory licenses to do so legally. Indeed, Defendants have (and have at all

30

relevant times had) a mechanical license agreement with the Harry Fox Agency ("HFA") and a compliment of compulsory licenses which permit them to make the audio recordings now at issue available for purchase in the form of on-demand streams, digital downloads, and other more traditional media.

63.     Moreover, Defendants remit (and have at all relevant times remitted) the appropriate royalties for on-demand streams, digital downloads, and traditional media distributions, and those royalties have never been returned to Defendants.

64.     Finally, Plaintiffs allege that Defendants have infringed their exclusive rights by unlawfully synchronizing Plaintiffs' musical compositions with visual images of concert performances to create audiovisual recordings without obtaining the necessary synchronization (or "synch") licenses.

65.     Defendants, however, do not synchronize any musical compositions with visual images; all of the audiovisual recordings that Defendants make available for access and/or purchase on their websites in the form of on-demand streams were synchronized years ago (at the time the concerts in question were recorded) with the permission and legal consent of the artists who controlled the copyrights in the musical compositions they performed.  And, as noted above, Defendants possess all of the necessary performance rights and mechanical and compulsory licenses to make these audiovisual concert recordings available for access and/or purchase on their websites in the form of on-demand streams.

66.     Moreover, even if the recordings were created without the proper synch licenses, any claims arising therefrom were long ago barred by the Copyright Act's three-year statute of limitations.  Indeed, Plaintiffs either knew or should have known of these alleged infringements decades ago (when Bill Graham first exploited his audiovisual recordings), and at the very latest,

they either knew or should have known as of 2009, when Defendants first made them publically available for access and/or purchase on their websites.

**Third-Party Defendants' Defamatory Statements**

67.     The NMPA's involvement in this lawsuit is no secret.  Although not technically a named party (until now), the NMPA issued a press release on May 27, 2015—the same day that the Plaintiffs filed their groundless complaint—claiming responsibility for the action and advertising "NMPA Files Lawsuit Against Wolfgang's Vault for Massive Copyright Infringement."

68.     The NMPA did not stop there.  In the same press release, Third-Party Defendant David Israelite—the NMPA's President and CEO—decided to use the filing of Plaintiffs' baseless action as a springboard for an undeserved burst of malicious publicity designed to damage Defendant BGA's reputation and business and to score points in the court of public opinion.

69.     Israelite released the following statements:  "The Wolfgang's Vault websites have profited in large part because of the significant use of unlicensed music, primarily concert footage, available on their sites.  Systematic copyright infringement cannot be a business model, and it is unfortunate that Wolfgang's Vault chose not to compensate all of the creators responsible for their content."

70.     Israelite made these statements in a published press release regarding this action. Upon information and belief, the press release was distributed nationally and internationally, and was picked-up and republished by various Internet and print media outlets.

71.     Israelite's statements are matters of fact and are demonstrably false, as the "unlicensed" works allegedly being "infring[ed]" were, in fact, legally acquired and properly licensed by BGA for valuable consideration.

72.     Israelite either knew the statements were false or published them with a reckless disregard for their truth or falsity.  At a minimum, Israelite acted in a grossly irresponsible matter without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties.

73.     As a proximate result of Israelite's statement and its subsequent publication and dissemination, BGA has suffered grave injury to its business reputation and has been damaged financially by lost profits and business opportunities.

## FIRST COUNTERCLAIM

**(Declaratory Judgment – Streaming, Downloading, and Distribution of Traditional Media)**

**(Asserted on behalf of Defendants-Counterclaim Plaintiffs against Plaintiffs-Counterclaim Defendants)**

74.     Defendants repeat, reiterate, and reallege the foregoing paragraphs as if fully set forth herein.

75.     Defendants seek a judicial determination as to the parties' rights and obligations in connection with Defendants' ownership and use of the property at issue in this action, including without limitation a determination and declaration that Defendants legally acquired said property free of any encumbrances, that Defendants own the intellectual property at issue and have not infringed any property under the Copyright Act and related statutes, including but not limited to the property identified on Exhibit A annexed to Plaintiffs' Complaint, and that Defendants possess all rights and licenses necessary to exploit said property without reservation, including but not limited to performance rights and mechanical and compulsory licenses permitting Defendants to make the property now at issue available via on-demand streams, digital downloads, and/or other traditional media, like CDs and records.

76.     A judicial declaration is necessary and appropriate at this time so that the parties

may understand their obligations and conduct themselves accordingly.

## SECOND COUNTERCLAIM

### (Declaratory Judgment – Synchronization)

### (Asserted on behalf of Defendants-Counterclaim Plaintiffs against Plaintiffs-Counterclaim Defendants)

77.     Defendants repeat, reiterate, and reallege the foregoing paragraphs as if fully set forth herein.

78.     Defendants seek a judicial determination as to the parties' rights and obligations in connection with Defendants' ownership and use of the audiovisual property at issue in this action,  including without limitation a determination and declaration that Defendants legally acquired said property free of any encumbrances, that Defendants own the intellectual property at issue and have not infringed any property under the Copyright Act and related statutes, including but not limited to the property identified on Exhibit A annexed to Plaintiffs' Complaint, and that Defendants possess all rights and licenses necessary to exploit said property without reservation, including but not limited to performance rights and mechanical and compulsory licenses permitting Defendants to make the audiovisual property now at issue available for access and/or purchase on their websites in the form of on-demand streams, and further that Defendants do not need synch licenses to do so, and that any copyright infringement claims that Plaintiffs may once have had sounding in a failure to obtain synch licenses for the synchronization of the audiovisual property now at issue are time barred by the applicable statute of limitations.

79.     A judicial declaration is necessary and appropriate at this time so that the parties may understand their obligations and conduct themselves accordingly.

## FIRST (THIRD-PARTY) CAUSE OF ACTION

### (Defamation)

**(Asserted on behalf of Third-Party Plaintiffs Bill Graham Archives, LLC, d/b/a Wolfgang's Vault, Bill Graham Archives, LLC, d/b/a Concert Vault, Bill Graham Archives, LLC, d/b/a Music Vault, and Bill Graham Archives, LLC, d/b/a Daytrotter against Third-Party Defendants NMPA and David Israelite)**

80.     Third-Party Plaintiff BGA repeats, reiterates, and realleges the foregoing paragraphs as if fully set forth herein.

81.     Third-Party Defendants' wrongful acts alleged herein constitute defamation *per se* under New York Law.

82.     Third-Party Defendants, directly or through a spokesperson, employee, or agent, published or caused to be published a press release on or about May 27, 2015, that falsely accused BGA of dealing in "unlicensed" works and described BGA's business model as "[s]ystematic copyright infringement."

83.     Third-Party Defendants' statements are defamatory *per se* because they injure BGA's professional name and reputation by stating or implying that BGA is deceitful, unethical, and without integrity, and by falsely portraying BGA as guilty of a serious crime.

84.     Third-Party Defendants published the false and defamatory statements with actual malice because they either knew the statements were false or published them with a reckless disregard for their truth or falsity.  At a minimum, Third-Party Defendants acted in a grossly irresponsible matter without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties.

85.     Third-Party Defendants were motivated by hatred, personal spite, greed, and/or ill will towards BGA, and Third-Party Defendants maliciously published the statements with intent

to harm BGA, drive customers away, and jeopardize BGA's credibility.

86.     Third-Party Defendants intended and knew that their publication of the defamatory statements described above would be widely reported around the world, thereby causing additional harm to BGA with each republication.

87.     Third-Party Defendants are not only liable for their own intentional conduct, but are also vicariously liable for the tortious acts of their employees or agents.

88.     In making these statements, Third-Party Defendants were not protected by any privilege, whether qualified or absolute.  Indeed, these statements were not simply opinion, but rather, empirically verifiable statements of fact, as confirmed by the ample evidence of acquisition, ownership, and licensing that BGA is prepared to offer at trial, and which Third-Party Defendants refused to review or consider.

89.     As a result of the defamatory statements described above, BGA has suffered (and continues to suffer) damages, including injury to its name, reputation, and financial interests.

90.     By reason of the foregoing, BGA is entitled to general damages against Third-Party Defendants in an amount to be proven at trial.

91.     Additionally, BGA has suffered special damages in the form of lost sales and subscription fees in an amount to be proven at trial.

92.     Finally, because of the willful, wanton, and intentional nature of Third-Party Defendants' conduct, BGA also demands an award of punitive damages in an amount to be proven at trial.

## DEMAND FOR JURY TRIAL

Defendants-Counterclaim Plaintiffs/Third-Party Plaintiffs demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

**WHEREFORE**, Defendants-Counterclaim Plaintiffs William Sagan, Norton LLC, and Bill Graham Archives, LLC and Third-Party Plaintiffs Bill Graham Archives, LLC pray for relief and respectfully request that the Court enter judgment in their favor and against Plaintiffs-Counterclaim Defendants and Third-Party Defendants:

a.  Awarding Defendants-Counterclaim Plaintiffs/Third-Party Plaintiffs compensatory damages in an amount to be proven at trial;

b.  Awarding Third-Party Plaintiffs special damages in an amount to be proven at trial;

c.  Awarding Third-Party Plaintiffs punitive damages in an amount to be proven at trial;

d.  Awarding Defendants-Counterclaim Plaintiffs/Third-Party Plaintiffs their attorneys' fees, costs, and expenses incurred in responding to Plaintiffs-Counterclaim Defendants' Complaint;

e.  Denying any and all relief requested by Plaintiffs-Counterclaim Defendants; and

f.  Ordering such other and further relief, legal and equitable, as the Court deems just and proper.

Dated: August 3, 2015

Respectfully submitted,

 /s/ Michael S. Elkin
WINSTON & STRAWN LLP

Michael S. Elkin
Thomas Patrick Lane
Daniel N. Guisbond
200 Park Avenue
New York, New York 10166-4193
Phone: 212.294.6700
Fax: 212.294.4700
E-Mail:  melkin@winston.com
E-Mail:  tlane@winston.com
E-Mail:  dguisbond@winston.com

*Attorneys for Defendants William Sagan, Norton*

*LLC, Bill Graham Archives, LLC, d/b/a Wolfgang's Vault, Bill Graham Archives, LLC, d/b/a Concert Vault, Bill Graham Archives, LLC d/b/a Music Vault and Bill Graham Archives, LLC d/b/a Daytrotter*