```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ABKCO MUSIC, INC., et al.,

            Plaintiffs,              New York, N.Y.

       v.                            15 Civ.4025(ER)

WILLIAM SAGAN, et al.,

            Defendants.

------------------------------x
                                     September 3, 2015
                                     10:22 a.m.
Before:

                  HON. EDGARDO RAMOS,

                                     District Judge

                       APPEARANCES

LOEB & LOEB LLP
     Attorneys for Plaintiffs
BY:  BARRY ISAAC SLOTNICK
     CHRISTIAN D.  CARBONE
     TAL EFRIAM DICKSTEIN

WINSTON & STRAWN LLP (NY)
     Attorneys for Defendants
BY:  MICHAEL S. ELKIN
     DANIEL GUISBOND
```

1          THE CLERK:  In the matter of ABKCO Music versus Sagan,
2     counsel please state your names for the record.
3          MR. SLOTNICK:  Barry Slotnick for the plaintiffs, of
4     Loeb & Loeb, with Christian Carbone and Tal Dickstein.
5          THE COURT:  Good morning.
6          MR. ELKIN:  Good morning, your Honor.  Michael Elkin,
7     Winston & Strawn.  I have with me Dan Guisbond from my firm.
8     We represent the defendants.
9          THE COURT:  Good morning to you as well.
10         This matter is on for an initial conference.  So let
11    me start with Mr. Slotnick.  Tell me what your case is all
12    about in a nutshell, if you will.
13         MR. SLOTNICK:  Sure.  Plaintiffs are copyright owners.
14    They own musical compositions, typically the work that
15    underlies the recorded performance or the live performance of a
16    musical composition.  The defendants operate numerous websites
17    which exploit commercially those musical compositions without
18    licenses from any of the plaintiffs.  That in a nutshell is
19    what the case is about.
20         Many of these recordings are recordings of live
21    concerts that took place as long ago as, I guess, the 1960s and
22    '70s, some of which were recorded apparently by Bill Graham,
23    the late impresario and concert promoter.
24         THE COURT:  Was that the same Bill Graham that was the
25    subject of the fair use case?

1          MR. SLOTNICK:  Bill Graham was the subject of a fair
2    use case with respect to --
3          THE COURT:  The publishing of a book.
4          MR. SLOTNICK:  -- images not of music but of images
5    relating to posters.  That is the Bill Graham we are talking
6    about.
7          THE COURT:  OK.
8          Mr. Elkin.
9          MR. ELKIN:  Yes, your Honor.  The principal defendant
10   here is Bill Graham Archives, which is owned by Norton LLC.
11   Mr. Sagan is also listed as a defendant as the majority
12   shareholder.
13         Our clients purchased these archival recordings and
14   footage of concerts in a number of transactions where they paid
15   tens of millions of dollars for these assets.  They operate
16   their business, your Honor, based on various licenses that are
17   recognized by law and the parties.  There is a dispute, though,
18   between us as to whether or not those licenses are sufficient.
19   We believe that they are; they believe that they are not.  And
20   in a nutshell that's what the case is about.
21         We have some counterclaims for declaratory judgment
22   with respect to whether the activities they claim are
23   infringing or not infringing.  We have a counterclaim for
24   defamation, as well, in respect of a statement that was made at
25   the outset of a case by the head of the trade association who

1     sponsored this lawsuit.
2             THE COURT:  Is there any dispute that plaintiffs own
3     the compositions of the works at issue?
4             MR. ELKIN:  Not at this stage, your Honor.  We haven't
5     had any discovery, but I don't have any reason to believe that
6     they do not own the copyrights at issue.
7             THE COURT:  From whom did you purchase the licenses?
8             MR. ELKIN:  We acquired the physical property,
9     representations that these rights were owned by the various
10    companies -- one of them was Clear Channel, this big -- which
11    is now Live Nation -- other companies that own assets, like
12    King Biscuit Flower Hour, which is a syndicated radio show.
13            THE COURT:  Biscuit Flower Hour?
14            MR. ELKIN:  Yes.  King Business Flower Hour.
15            THE COURT:  King Business Flower Hour.
16            MR. ELKIN:  It goes back a number of years and I
17    hardly remember it, but I do have some passing distant memory
18    of it.
19            But the way it works, as your Honor will learn in this
20    case, with respect to musical compositions, the actual
21    downloading impinges on what's called the right of
22    reproduction.  Those rights can be obtained either through a
23    clearinghouse, which is referred to as Harry Fox, or through a
24    compulsory licensing scheme under the copyright statute.  With
25    regard to the actual streaming itself, it impinges on the right

1  of public performance.  And there are rights that you can

2  obtain through SESAC, BMI, ASCAP, the three performing rights

3  societies.

4         There is also at issue in this case something called

5  the synchronization right, which is the ability to synchronize

6  the musical composition with the video.  We believe that those

7  rights were granted by the performers who control those

8  compositions, or otherwise those claims are barred by the

9  three-year statute of limitations provided for under the

10 copyright law.

11        So we believe that we have acquired those licenses or

12 they are not necessary.

13        THE COURT:  OK.  I think I have a handle on all of

14 that.

15        I do have the parties' competing proposed discovery

16 schedules.  Obviously, I just got them so I haven't had an

17 opportunity to study them.

18        Why are there two?  What are the areas of

19 disagreement?

20        MR. SLOTNICK:  Your Honor, if I may?  There are three

21 areas of disagreement.  One has to do with the date for joinder

22 of additional parties.  The second has to do with the

23 applicability of Local Rule 33.3, and the last has to do with

24 whether or not there should be staged discovery.

25        We are proponents of a somewhat later date with

1    respect to the joinder of additional parties.  We suggest
2    December 15.
3             THE COURT:  What paragraph is that?
4             MR. DICKSTEIN:  Three.
5             MR. SLOTNICK:  Three.
6             THE COURT:  Well, what I have says December 15 also
7    for the defense proposed order.  Maybe I don't have the --
8             MR. ELKIN:  I think for the plaintiffs, your Honor, I
9    think it is paragraph 3 in their proposed order.
10            THE COURT:  Yes.  But I have one that purports to be
11   the defendants' proposed order and it has the same date.
12            What date did you want?
13            MR. GUISBOND:  October 9.
14            MR. ELKIN:  We, unfortunately and inadvertently, your
15   Honor, submitted the wrong proposal.
16            Can I hand this up, your Honor?
17            THE COURT:  Please.  Because I looked at some of the
18   dates and these appear to be identical, and I was right.
19            (Pause)
20            Now, in the scheme of things, that is not an
21   incredibly large difference.  Why are the parties placing so
22   much importance on this, Mr. Elkin?
23            MR. ELKIN:  Thank you, your Honor, and I realize we
24   don't want to tax the Court very much about this.  This was a
25   case that we believe that was brought after significant

1   investigation by the plaintiffs.  We believe -- our client is
2   small.  They've named every single entity that's possibly
3   involved in it.  What we are concerned with, your Honor, this
4   is a case that admittedly is being sponsored by a large trade
5   association.  Our client is concerned that this is an
6   opportunity just to fish around for it to add more and more
7   plaintiffs.
8           That is the concern that our client had.  I understand
9   why that's happened.  There is a precedent related to other
10  cases in which our client has been involved in trade
11  associations, and that's the concern that we have.
12          THE COURT:  And was Mr. Slotnick on the other side of
13  those cases?
14          MR. SLOTNICK:  Your Honor, we would like to get some
15  discovery, documents and interrogatory responses before we make
16  any kind of decision.  Clearly, the concern that Mr. Elkin
17  states could be obviated by simply bringing another lawsuit on
18  behalf of other copyright owners.  We think that this is a more
19  measured way of addressing this.  Let's get some discovery now
20  before we start really figuring out who is in and who is out of
21  the case and, you know, where we go with depositions, which
22  really sort of leads to the other two points that we have.
23          THE COURT:  October 9 is right around the corner,
24  Mr. Elkin.  I don't think that is a sufficient amount of time.
25  I am going to go with the December 15 date.

1           MR. SLOTNICK:  Thank you, your Honor.

2           THE COURT:  OK.  Next.

3           MR. SLOTNICK:  The applicability of Rule 33.3

4   regarding limitation on scope of interrogatories.  There are a

5   lot of parties to this case.  Based on what we've seen from the

6   initial disclosures from the defendants, there will be a lot of

7   witnesses in this case, many of whom are performing artists,

8   many of whom will take some effort to subpoena for deposition,

9   and it is an indication to us that some of the agreements that

10  Mr. Elkin referred to with performers are either oral or

11  implied.  We think that it will help discovery to expand on

12  interrogatories so that we're not running out and dealing with

13  a variety of issues that, frankly, none of us were quite

14  certain where they are going to lead.

15          We think that a measured approach -- sending out the

16  interrogatories, sending out document requests -- will get us a

17  better place than just asking for names and general

18  descriptions of documents.

19          THE COURT:  Mr. Elkin.

20          MR. ELKIN:  Thank you, your Honor.

21          I think the underlying policy surrounding the Local

22  Rule 33.3 are as applicable here as they are in the vast

23  majority of cases in this court.  The witnesses -- the efforts

24  that are going to have to be made to respond to substantive

25  interrogatories at this stage is going to be duplicative of the

1    testimony that is going to be provided in depositions
2    themselves.  I think the amount of time that the interrogatory
3    process is going to entail at the beginning is not going to
4    facilitate getting to the finish line any sooner, and I think
5    we're going to be bogged down with written discovery.
6             There is no way to sort of dispense with the
7    depositions in this case, which are going to be the most
8    probative evidence for the Court.  We're relying on a lot of
9    equitable defenses here, issues with regard to how facts
10   developed, whether licenses were created, where consents were
11   given, and the ability and time and effort to go to research
12   all of this to answer substantive interrogatories at the outset
13   of the case.  If they want to have contentious interrogatories
14   down the road or if they want to have some other sort of
15   discovery device that will cut through some of this, I
16   understand it.  But this is going to be nothing more than a
17   huge effort, and it will get in the way of having this case
18   progress.
19            THE COURT:  Mr. Slotnick, what is the precise issue
20   that you are trying to avoid?
21            MR. SLOTNICK:  Well, there are a couple of things.
22            Number one, we have well over 200 copyrights involved.
23   Whether or not they are the subject of one agreement, four
24   agreements, a dozen agreements with different performers,
25   whether those agreements are written, oral, implied, it would

1  be nice to know at least what the basis of the defendants'
2  defenses are before we get into depositions.  We're going to be
3  able to do some of that through documents.  And if there are
4  documents that are indicative of a grant of rights, whether or
5  not the party who granted them had them to grant, that's one
6  thing.  But given the fact that we have a list of, I think, 45
7  or 50 artists, starting off with Mick Jagger, it just seems to
8  me that it would be easier to ask that question, get a written
9  response than waiting to hear from Mick Jagger, if we ever hear
10 from Mick Jagger, or even waiting to hear from defendants in
11 deposition.  I can't imagine anything that would take more time
12 than preparing for and taking depositions.  An answer to these
13 questions will get us all focused on what documents there are,
14 what documents there aren't, and what the basis for the
15 defendants' defenses are.
16          MR. ELKIN:  Your Honor, very briefly.
17          I think there is a window of insight to what
18 Mr. Slotnick articulated which he kept referring to documents.
19 Let them serve a document demand, and they'll get the vast
20 majority of all of the information that they're going to seek
21 in these interrogatories that we haven't seen yet.  I suspect
22 that once they receive all of the documents in response to
23 their document demand, largely much if not all of the evidence
24 that is probative here they're going to have.  There may be
25 some interstitial information that lurks in the memory of

1  actual witnesses, but to have interrogatories propounded at a
2  time when most of this can actually be revealed through
3  documents I think is adding a lot of work to the process.
4      THE COURT: Why don't we proceed this way. My
5  inclination is to have Rule 33.3 apply. And, Mr. Slotnick, if
6  in the process you are encountering particular difficulties,
7  then you can come back and make an application, but for now we
8  will proceed under the rule.
9      Next.
10      MR. SLOTNICK: Well, Mr. Elkin sort of gave a preview
11  of where the last one, which is staged discovery. If there are
12  documents that will answer all or many of our questions, that's
13  fantastic. We should do that first. I have no great desire to
14  submit voluminous interrogatories at this time. And, frankly,
15  I have no great desire to start taking depositions of witnesses
16  immediately, or defending depositions of witnesses, when, as
17  Mr. Elkin says, the documents are going to answer a lot of the
18  questions.
19      I think that a staged discovery -- let's get our
20  document requests in, let's respond to them, and then let's see
21  what really has to be done with respect to discovery. We have
22  23 different plaintiffs; some of them are affiliated companies.
23  We have a significant number of defendants, and we have
24  something like 45 nonparty witnesses that the defendants have
25  identified. If we can eliminate even 20 percent of what will

1  go on in discovery and depositions through document production,
2  you know, that's time worth spent dealing with documents first.
3  And whether it's a three-month window, a six-month window or
4  whatever it is, it seems to us that staged discovery now makes
5  more sense than everybody just trying to be as aggressive as
6  they can early on.
7           THE COURT:  Why don't you tell me how the discovery
8  would be staged.  What would be the stages?
9           MR. SLOTNICK:  Originally we had thought that that
10 would be document requests and interrogatories.  We still may
11 do some interrogatories but given the Court's ruling, I think
12 those are less significant at this point.  I think that
13 document requests and whatever the issues are that come up with
14 document requests should come first.
15          We had proposed six months before depositions take
16 place, say, in February.  If it's, you know, marginally shorter
17 than that, we think it probably makes sense.  But I think that
18 given the number of parties, the number of documents and the
19 number of issues that there are, you know, I'm not going to be
20 optimistic that we're going to get all of that done in 30, 60
21 or 90 days.
22          THE COURT:  That all sounds reasonable to me,
23 Mr. Elkin.
24          MR. ELKIN:  I don't have a problem, your Honor, with
25 respect to having document discovery precede depositions.  The

1   problem that I have with the so-called staged discovery
2   proposal -- and I don't think that Mr. Slotnick sort of amply
3   described an important nuance -- he proposes that no nonparty
4   depositions take place until the party depositions have
5   concluded.  Let me attempt to explain to the Court why I think
6   that is not workable here.
7           THE COURT:  You are OK with the concept of going
8   forward with the documents and interrogatories first before
9   depositions?
10          MR. ELKIN:  As long as there is ample time to be able
11  to conduct depositions after that, yes, your Honor.
12          THE COURT:  OK.
13          MR. ELKIN:  This is a case, admittedly, where neither
14  the plaintiffs nor, frankly, our clients have any of the core
15  knowledge, primary knowledge with regard to what happened 10,
16  20, 30, 40 years ago.  There are -- most of the information
17  that's going to be probative with respect to these claims, at
18  least from our perspective on our defenses and our
19  counterclaims, are going to be from nonparties, people who were
20  running the Bill Graham concert business at the time, people
21  that were negotiating with the composers, the actual artists
22  themselves, to some extent.  And to -- frankly, while we may
23  take depositions of the plaintiffs, all they're going to
24  basically be able to say is, yeah, I own this copyright
25  registration, I acquired it from this company, and that is not

1    going to really answer a question because, as I said at the
2    outset, I don't know that copyright ownership is going to be
3    key here.
4             The issue is whether or not licenses and consents in
5    the course of dealing matter here.  And what I would hate to
6    have to happen is for us to go through party depositions and
7    then we find out, much to Mr. Slotnick's correct observation,
8    that there are going to be motions to quash the subpoenas.
9    That's going to push out for an appreciable period of time, if
10   the Court permits, the discovery process.  If we are going to
11   get to any sort of resolution or better assessment, I think we
12   need to have both party and nonparty depositions take place
13   concurrently.
14            THE COURT:  So is it anticipated that all of the
15   various artists that are involved here will have to be deposed?
16            MR. ELKIN:  I don't know that all of them would have
17   to.  Your Honor, as you know, under Rule 26 we try to list all
18   of the potential witnesses because we don't want to be
19   precluded.  I can't imagine, especially given the Court's
20   limits on the number of depositions that can take place -- we
21   haven't had a meet and confer yet with regard to who we want,
22   but I think for purposes of teeing this up for your Honor, we
23   wanted to list as many nonparty witnesses who we would possibly
24   anticipate, but I imagine that that list is going to be cut
25   down rather dramatically.  But at this stage, for us to be

1    precluded from taking the most important depositions, when we

2    get to that stage I think it would be unfair to our side.

3             THE COURT:  Mr. Slotnick, it appears -- I mean, if

4    Mr. Elkin is describing this situation correctly that the

5    people with perhaps the most relevant information are not in

6    the caption --

7             MR. SLOTNICK:  Well, they are not in the caption

8    because they don't own anything, and so they don't have -- they

9    don't have the right to grant the rights that Mr. Elkin thinks

10   will be important to learn.

11            We don't have a particular problem with nonparties and

12   parties being deposed at the same time.  I would agree with

13   Mr. Elkin that when we get a notice of deposition for the

14   plaintiffs, you know, we will make those people available

15   within our schedules.  I do think that the people that neither

16   of us control -- and, arguably once, you saw the list, perhaps

17   no one controls -- you know, will be a challenge to whomever

18   serves the subpoena first.

19            So I don't have a problem with that.  I think it was

20   the Court's rules that talk about plaintiffs or the parties'

21   depositions going first.  We don't care.  We think that we can

22   try to limit that number.  We have been working together to do

23   this.  But to us the key issue here is what are the documents,

24   what do the documents say.  What Mr. Elkin seems to be

25   suggesting is the documents aren't going to tell us very much,

F93dabkc

1     which, you know, we are OK with.
2             Right now we think -- we think the case is exactly
3     where we want it to be right now.  If we try to structure
4     depositions at the same time, that's fine.  Presumably, a lot
5     of these people are not in New York; we are going to have to
6     travel.
7             THE COURT:  OK.  So it sounds like we have agreement
8     on staged discovery and the fact that the party and nonparty
9     depositions can take place simultaneously.
10            So those are the three issues, Mr. Slotnick?
11            MR. SLOTNICK:  Yes, your Honor.
12            THE COURT:  So I take it the parties can get together
13    and work out within those parameters what the schedule is?
14            MR. ELKIN:  Yes, your Honor.
15            THE COURT:  So then I will wait for you to submit a
16    joint discovery order.
17            And do the parties agree on the discovery cutoff date?
18            MR. ELKIN:  Yes, your Honor.
19            MR. SLOTNICK:  Yes, your Honor.
20            THE COURT:  So then what I'll do is we'll go ahead and
21    schedule the subsequent status conference for on or immediately
22    after October 21, 2016.
23            Ms. Rivera.
24            THE CLERK:  October 26, 2016, at 11 a.m.
25            THE COURT:  And I will also refer the case to the

1  assigned magistrate, who is Magistrate Judge Maas, for general
2  pretrial.  So any particular discovery issues, those should be
3  brought to Magistrate Judge Maas in the first instance.
4          And I will give the parties -- how much time do you
5  think you will need to submit a joint order?
6          MR. SLOTNICK:  Tomorrow.  Sometime this week, the
7  beginning of next.
8          THE COURT:  By the end of the day tomorrow?
9          MR. ELKIN:  That is fine, your Honor.
10         THE COURT:  Wonderful.  So we'll do that.  OK.
11         Is there anything else that we need to do today?
12         MR. ELKIN:  Not from defendants, your Honor.
13         MR. SLOTNICK:  Your Honor, there is a counterclaim for
14  defamation the defendants intend to move to dismiss.
15         THE COURT:  OK.  That is in haec verba, but I do have
16  a premotion conference requirement.  So when I get the letter,
17  I will consider it and I will direct Mr. Elkin to respond.
18         MR. SLOTNICK:  Thank you.
19         THE COURT:  OK.  Anything further?
20         MR. ELKIN:  No, your Honor.
21         MR. SLOTNICK:  No, your Honor.
22         THE COURT:  Good.  We are adjourned.
23         MR. ELKIN:  Thank you very much, your Honor.
24         MR. SLOTNICK:  Thank you, Judge.
25                                      -  -  -