UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                           :

ABKCO MUSIC, INC., COLGEMS-EMI
MUSIC INC., EMI ALGEE MUSIC CORP.,
EMI APRIL MUSIC INC., EMI
BLACKWOOD MUSIC INC., EMI
CONSORTIUM MUSIC PUBLISHING, INC.  :  Case No. 15 Civ. 04025 (ER) (FM)
d/b/a EMI FULL KEEL MUSIC, EMI
CONSORTIUM SONGS, INC. d/b/a EMI  :  Hon. Edgardo Ramos
LONGITUDE MUSIC, EMI FEIST
CATALOG INC., EMI ROBBINS CATALOG
INC., EMI UNART CATALOG INC., JOBETE
MUSIC CO., INC., SCREEN-GEMS-EMI
MUSIC INC., STONE AGATE MUSIC,
STONE DIAMOND MUSIC CORP.,
IMAGEM MUSIC LLC, PEER
INTERNATIONAL CORPORATION, PSO
LIMITED, PEERMUSIC LTD., PEERMUSIC
III, LTD., SONGS OF PEER, LTD., SPIRIT
CATALOG HOLDINGS S.A.R.L., SPIRIT
TWO MUSIC, INC., WARNER-
TAMERLANE PUBLISHING CORP. and WB
MUSIC CORP.,

                 Plaintiffs/Counterclaim-
                 Defendants,

        -against-

WILLIAM SAGAN, NORTON LLC, BILL
GRAHAM ARCHIVES, LLC d/b/a
WOLFGANG'S VAULT, BILL GRAHAM
ARCHIVES, LLC d/b/a CONCERT VAULT,
BILL GRAHAM ARCHIVES, LLC d/b/a
MUSIC VAULT and BILL GRAHAM
ARCHIVES, LLC d/b/a DAYTROTTER,

                 Defendants/Counterclaim
                 -Plaintiffs.
------------------------------------------------------------X

BILL GRAHAM ARCHIVES, LLC d/b/a            :
WOLFGANG'S VAULT, BILL GRAHAM              :
ARCHIVES, LLC d/b/a CONCERT VAULT,         :
BILL GRAHAM ARCHIVES, LLC d/b/a            :
MUSIC VAULT and BILL GRAHAM                :
ARCHIVES, LLC d/b/a DAYTROTTER,            :
                                           :
                Third-Party Plaintiffs,     :
                                           :
      -against-                         :
                                           :
THE NATIONAL MUSIC PUBLISHERS'             :
ASSOCIATION, and DAVID ISRAELITE           :
                                           :
                Third-Party Defendants.     :
------------------------------------------ X

**NATIONAL MUSIC PUBLISHERS' ASSOCIATION AND DAVID ISRAELITE'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS <u>THE THIRD-PARTY COMPLAINT</u>**

## **TABLE OF CONTENTS**

**Page**

Table of Authorities ................................................................................................................... ii

ARGUMENT .............................................................................................................................. 1

I.      BGA Misconstrues the Legal Standard on the Instant Motion ........................................... 2

II.     The Press Release Is – at the Very Least – a Substantially Accurate Report of
the Allegations in the Lawsuit ........................................................................................... 3

      A.     The Press Release Does Not Suggest More Egregious Conduct by BGA
Than Does the Complaint Itself ............................................................................. 4

      B.     The Press Release Does Not Transform the Filing of the Lawsuit Into a
Final Judgment ....................................................................................................... 7

III.    The Press Release Relays NMPA's and Plaintiffs' Opinion About the Lawsuit ................ 9

CONCLUSION ......................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alf v. Buffalo News, Inc.*,
   100 A.D.3d 1487 (4th Dep't 2012), *aff'd*, 21 N.Y.3d 988 (2013) ........................................... 4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................................. 3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................................. 3

*Belly Basics v. Mothers Work*,
   95 F. Supp. 2d 144 (S.D.N.Y. 2000) ........................................................................................ 9

*Biro v. Conde Nast*,
   963 F. Supp. 2d 255 (S.D.N.Y. 2013) *aff'd,* 2015 U.S. App. LEXIS 21195 (2d
   Cir. Dec. 8, 2015) ................................................................................................................. 3-4

*Cholowsky v. Civiletti*,
   69 A.D.3d 110 (2d Dep't 2009) ................................................................................................ 5

*D'Annuzio v. Ayken, Inc.*,
   876 F. Supp. 2d 211 (E.D.N.Y 2012) ....................................................................................... 6

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
   669 F. Supp. 2d 405 (S.D.N.Y. 2009) ...................................................................................... 5

*Gondal v New York City Dep't of Educ.*,
   19 A.D.3d 141 (1st Dep't 2005) ............................................................................................... 3

*Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation*,
   2009 U.S. Dist. LEXIS 111675 (E.D.N.Y. Dec. 1, 2009) ........................................................ 5

*Grogan v. Blooming Grove Volunteer Ambulance Corp.*,
   917 F. Supp. 2d 283 (S.D.N.Y. 2013) ...................................................................................... 3

*Immuno AG v. Moor-Jankowski*,
   77 N.Y.2d 235 (1991) ............................................................................................................... 9

*Karedes v. Ackerly Grp., Inc.*,
   423 F.3d 107 (2d Cir. 2005) ..................................................................................................... 7

*Karp v. Hill and Knowlton, Inc.*,
   631 F. Supp. 360 (S.D.N.Y. 1986) ..................................................................................... 4, 10

*Klig v. Harper's Magazine Found.*,
   600899/2010, 2011 NY Slip Op 31173(U), (Sup. Ct. Nassau Cnty. Apr. 26,
   2011) ................................................................................................................................8

*Lacher v. Engel*,
   33 A.D.3d 10 (1st Dep't 2006) ........................................................................................5

*Lan v. Time Warner, Inc.*,
   2013 U.S. Dist. LEXIS 56816 (S.D.N.Y. Apr. 19, 2013)................................................4

*Lan v. Time Warner, Inc.*,
   2014 U.S. Dist. LEXIS 25382 (S.D.N.Y. Feb. 25, 2014)................................................3

*November v. Time Inc.*,
   13 N.Y.2d 175 (1963) ......................................................................................................5

*Pisani v. Staten Island Univ. Hosp.*,
   440 F. Supp. 2d 168 (E.D.N.Y. 2006) .............................................................................9

*Saleh v. N.Y. Post*,
   78 A.D.3d 1149 (2d Dep't 2010) ....................................................................................4

*Stepanov v. Dow Jones & Co.*,
   120 A.D.3d 28 (1st Dep't 2014) .....................................................................................2

**Statutes**

Section 74 of New York's Civil Rights Law ................................................................... 1-2, 7, 9

**Other Authorities**

BILLBOARD.COM, "Wolfgang's Vault Sued by 26 Music Companies" May 27,
   2015  (available at
   http://www.billboard.com/articles/business/6576183/wolfgangs-vault-sued-
   by-26-music-companies) (last accessed Dec. 11, 2015)............................................8

JAMBASE.COM, "NMPA Sues Wolfgangs Vault for Copyright Infringement"  May
   27, 2015 (available at http://www.jambase.com/Articles/125217/NMPA-Sues-
   Wolfgangs-Vault-For-Copyright-Infringement) (last accessed Dec. 11, 2015) ........................9

ROCKOL.COM, "Wolfgang's Vault Sued by NMPA on Behalf of 26 Publishers"
   May 28, 2015 (available at  http://www.rockol.com/uk/news-644286/nmpa-
   sues-wolfgangs-vault-on-behalf-of-26-publishers) (last accessed Dec. 11,
   2015) ........................................................................................................................... 8-9

THEMUSICNETWORK.COM, "Live Concert Archive Wolfgang's Vault Sued by 26
   Companies" May 28, 2015 (available at
   https://themusicnetwork.com/news/live-concert-archive-wolfgangs-vault-
   sued-by-26-companies) (last accessed Dec. 11, 2015)............................................8

iv

MUSICALLY.COM, "Wolfgang's Vaults Faces Infringement Suit from NMPA"
   May 28, 2015(last accessed Dec. 11, 2015)..................................................................................9

Case 1:15-cv-04025-ER-HBP   Document 35   Filed 12/17/15   Page 6 of 17

National Music Publishers' Association ("NMPA") and its President and CEO David Israelite (together, the "Third-Party Defendants"), by their undersigned counsel, respectfully submit this reply to the opposition of Bill Graham Archives, LLC, d/b/a Wolfgang's Vault, Bill Graham Archives, LLC, d/b/a Concert Vault, Bill Graham Archives, LLC, d/b/a Music Vault, and Bill Graham Archives, LLC, d/b/a Daytrotter (the "Third-Party Plaintiffs" or "BGA") and in further support of their motion to dismiss the Third-Party Complaint.

## ARGUMENT

Although no stranger to being sued by copyright owners for violating their respective rights, BGA suddenly developed a thin skin when the Plaintiffs' trade association issued a press release to announce the commencement of this action. Characterizing NMPA's rather bland Press Release as "vicious", "scathing" and "poisonous" indicates either that BGA is trying to deflect the Court's attention away from the real issues in the case, or that BGA is confusing the Press Release with the recent presidential debates. However, no amount of attorney embellishments can change the fact that the Press Release, when viewed in its full context, merely announced the filing of this lawsuit and summarized the allegations of "massive copyright infringement" in the Complaint.

BGA's arguments boil down to the unsupportable assertion that the Press Release's reference to "systematic infringement" is somehow more severe or sweeping than the allegations of "massive copyright infringement" and conducting an "illicit business" in the Complaint itself. It plainly is not. Nor could the Press Release be read as stating that BGA's liability had already been established. The Press Release was issued the same day as the lawsuit was initially filed, and it expresses the mere "intention" and "hope" that BGA will be found liable at some point in the future. The Press Release is thus protected by New York's fair reporting privilege, Section

74 of New York's Civil Rights Law, which is designed to encourage reporting on, and public awareness of, judicial proceedings such as this.

BGA also cannot overcome the fact that the Press Release – posted on the website of a trade industry association whose "mandate is to protect and advance the interests" of music publishers and songwriters, including the publisher Plaintiffs in this action – is an expression of an interested party's opinion and comment on this litigation, and is thus speech protected by the First Amendment.

I.      **BGA Misconstrues the Legal Standard on the Instant Motion**

BGA begins its opposition brief by arguing points that are not at issue.  It first asserts (Br. 7, 9-10) that the statements in the Press Release are "reasonably susceptible of a defamatory connotation" – *i.e.*, they are theoretically capable of harming BGA's reputation – and that they are "defamatory *per se*" in that they relate to BGA's business.  Yet, while BGA would ultimately be unable to prove that any drop in sales or subscribers was caused by the Press Release as opposed to other reports of the commencement of the lawsuit or market factors, the Court need not reach that issue to decide this motion.  New York's absolute privilege for reports of judicial proceedings and the protection of statements of opinion bars BGA's claim as a matter of law.

BGA then argues that NMPA supposedly "do[es] not challenge the substantive sufficiency of BGA's pleading" of its defamation claim (Br. 10).  Yet, BGA gives only lip-service to the fact that one of the elements it must plead is that the statements are not privileged. *See Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 34 (1st Dep't 2014) ("To prove a claim for defamation, a plaintiff must show: (1) a false statement that is (2) published to a third party (3)

2

*without privilege* or authorization . . . .") (emphasis added).[1]

Because BGA has the burden of proving that the allegedly defamatory statements are not subject to privilege and are not statements of opinion, it must plausibly plead those elements by offering more than "naked assertions" or "conclusory statements". *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("formulaic recitation of the elements of a cause of action will not do."). Yet, BGA has offered nothing more than unsubstantiated assertions that "[i]n making these statements [in the Press Release], Third-Party Defendants were not protected by any privilege, whether qualified or absolute." (Counterclaim and Third-Party Cmplt. [Dkt. 12] ¶ 88.) BGA has not, for example, pled any material differences between the statements in the Press Release and the allegations in the lawsuit on which it reported. Its claim must therefore be dismissed. *See Gondal v. New York City Dep't of Educ.*, 19 A.D.3d 141, 142 (1st Dep't 2005) (dismissing defamation claim, stating "conclusory allegations … [are] insufficient to overcome the privilege").

## II. The Press Release Is – at the Very Least – a Substantially Accurate Report of the Allegations in the Lawsuit

Even assuming *arguendo* that BGA had adequately pled that the Press Release was not privileged, the Court should still grant the instant motion to dismiss. As explained in Third-Party Defendants' moving brief (Dkt. 30 at 7) – and as wholly ignored in BGA's opposition – courts are encouraged to decide at the pleading stage whether an allegedly defamatory statement is a privileged fair reporting, in order to avoid saddling the press and others who report on judicial proceedings with the costs of meritless litigation that would chill protected speech. *See Biro v.*

---

[1] *See also Lan v. Time Warner, Inc.*, 2014 U.S. Dist. LEXIS 25382, at *24 (S.D.N.Y. Feb. 25, 2014) (elements of defamation claim include that statement was published "without authorization or privilege"); *Grogan v. Blooming Grove Volunteer Ambulance Corp.*, 917 F. Supp. 2d 283, 290 (S.D.N.Y. 2013) (plaintiff must show that statement is "not protected by privilege") (quoting *Albert v. Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001)).

3

*Conde Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013) ("forcing defamation defendants to incur unnecessary costs can 'chill the exercise of constitutionally protected freedoms'"), *aff'd*, 2015 U.S. App. LEXIS 21195 (2d Cir. Dec. 8, 2015); *Lan v. Time Warner, Inc.*, 2013 U.S. Dist. LEXIS 56816, at *69 (S.D.N.Y. Apr. 19, 2013) ("Claims of defamation are well-suited to resolution at the pleading stage, so that the exercise of constitutionally-protected freedoms will not be chilled.")

To further prevent chilling protected speech, and to promote public awareness of judicial proceedings, the fair reporting standard is given "liberal interpretation" in favor of defamation defendants. *See Alf v. Buffalo News, Inc.*, 100 A.D.3d 1487, 1487-88 (4th Dep't 2012), *aff'd*, 21 N.Y.3d 988 (2013); *Saleh v. N.Y. Post*, 78 A.D.3d 1149, 1152 (2d Dep't 2010). "[I]t is enough that the substance of the [report] be substantially accurate.'" *Karp v. Hill & Knowlton, Inc.*, 631 F. Supp. 360, 363 (S.D.N.Y. 1986) (quoting *Holy Spirit Ass'n for the Unification of World Christianity v. N.Y. Times Co.*, 49 N.Y.2d 63, 67 (1979)).

When viewed under the appropriate legal standards, it is clear that the Press Release constitutes a fair report of the allegations of the Complaint in this action.

### A. The Press Release Does Not Suggest More Egregious Conduct by BGA Than Does the Complaint Itself

BGA's primary argument (Br. 10-13) is that the Press Release supposedly "suggest[s] far more serious, extensive and pervasive conduct than that actually alleged in the official proceeding[.]" BGA first complains (Br. 4-5) that the Press Release reports that this lawsuit was filed against BGA for "[m]assive [c]opyright [i]nfringement," and that the Press Release states the truism that "[s]ystematic copyright infringement cannot be a business model[.]" (Dkt. 31-1 ¶ 4.) Yet, those statements do no more than mirror the allegations in the Complaint, which expressly charge BGA with a "massive infringement" and "massive commercial exploitation" as

4

part of an "illicit business" (Cmplt. [Dkt 1] ¶¶ 4-6) – hardly "circumscribed" or "narrow" allegations as BGA characterizes them (Br. 2).  *See Lacher v. Engel*, 33 A.D.3d 10, 17 (1st Dep't 2006) ("Comments that essentially summarize or restate the allegations of a pleading filed in an action are the type of statements that fall within § 74's privilege."); *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 414-15 (S.D.N.Y. 2009) (dismissing defamation counterclaim where the statement "[did] not imply that [counterclaimant] engaged in any misconduct other than that alleged in the Complaint").[2]

Although NMPA is not a plaintiff in this action, the Complaint was filed at its direction.  As explained at the pre-motion conference, NMPA "supervises and administers litigation, including this one" on behalf of its music publisher members, such as Plaintiffs (Oct. 22, 2014 Hrg. Tr. [Dkt. 32] 8),[3] and there is no showing that the general public would ascribe different meanings to "filing" a lawsuit than to "supervising" or "administering" a lawsuit.[4]  In any event, the Press Release makes clear that the lawsuit was brought "on behalf of *several* music publisher members" (Dkt. 31-1 ¶ 1) (emphasis added), not by the entirety of the NMPA membership, as BGA seems to suggest (Br. 12).  The Press Release thus does not suggest that BGA has engaged

---

[2] If anything, the Complaint's allegations of "massive copyright infringement" and running an "illicit business" are *more* serious than the reporting in the Press Release.  *See Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation*, 2009 U.S. Dist. LEXIS 111675, at *54-55 (E.D.N.Y. Dec. 1, 2009) (defamation claim dismissed where "[i]f anything, the allegations in the complaint detail defendants' role in the black market far more explicitly than [subject statement]").

[3] Indeed, BGA itself argued that "NMPA gathered together these music publishers to get the lawsuit started and are likely funding it" (*Id.* at 7) and alleged that NMPA was the "mastermind" behind this litigation and that its "involvement in this lawsuit is no secret."  (Dkt. 12 ¶¶ 57, 67.)

[4] *See November v. Time Inc.*, 13 N.Y.2d 175, 178-79 (1963) ("The words are to be construed not with the close precision expected from lawyers and judges but as they would be read and understood by the public to which they are addressed."); *Cholowsky v. Civiletti*, 69 A.D.3d 110, 114 (2d Dep't 2009) (courts are directed to "overlook[] minor inaccuracies and concentrate[] upon substantial truth").

5

in any more serious conduct than does the Complaint itself.[5]

BGA next asserts (Br. 12-13) that the Press Release supposedly reports that BGA has not made payments to *any* music publishers or songwriters, while the allegations in the Complaint are supposedly limited to a "mere" 206 copyrights. Neither assertion is correct. First, none of the statements in the Press Release that BGA points to – "*much* of [BGA's] content was never properly licensed" (Dkt. 31-1 ¶ 2) (emphasis added); BGA operates "without *properly* paying the songwriters and music publishers whose creative content underlies the collection" (*Id.* at ¶ 3) (emphasis added); BGA's websites "have profited *in large part* because of the significant use of unlicensed music" (*Id.* at ¶ 4) (emphasis added) – can fairly be read as asserting that BGA has not made payments to *any* songwriters or music publishers, as BGA contends. Similarly, the statement "[BGA] chose not to compensate all of the creators responsible for their content" (*Id.*) does not mean that BGA has not made payments to *any* creators, but merely that BGA has made payments to only some, but not all, of those creators.

Second, the allegations in the Complaint are neither limited to the named Plaintiffs, nor to the representative list of works that they chose to sue on. The Complaint alleges that BGA "did not and could not acquire *any* copyright interests in and to the musical compositions embodied in those recordings" it acquired from Bill Graham's estate, or the compositions embodied in the recordings it acquired from other sources. (Cmplt. ¶¶ 51, 54) (emphasis added). The Complaint therefore alleges that BGA has "streamed over 2 *billion* recorded concert performances, sold tens

---

[5] At the pre-motion conference, the Court inquired as to whether the "NMPA s[ought] to cloak itself in immunity by posing itself as a plaintiff in the lawsuit." (Oct. 22, 2015 Hrg. Tr. [Dkt. 32] 7.) Notably, BGA has made no such argument, as the fair reporting privilege protects "*any* person, firm or corporation," and applies equally to parties as it does to non-parties. N.Y. Civ. R. Law § 74 (emphasis added); *D'Annuzio v. Ayken, Inc.*, 876 F. Supp. 2d 211, 221 (E.D.N.Y 2012) ("Section 74 applies to 'any person,' not just to journalists or attorneys."). Thus, the reference to NMPA filing the lawsuit was in no way an attempt to obtain an additional measure of protection under the fair reporting privilege.

of thousands of concert recordings for download, and are believed to have sold many more thousands of newly manufactured CDs, DVDs and records – <u>all without obtaining a proper license required for such downloads and reproductions</u>" (*Id.* at ¶ 8) (second emphasis added). Moreover, although the exhibit attached to the Complaint lists more than 200 musical works and over 800 unauthorized uses – a "massive" infringement by any measure – the Complaint makes clear that this is merely a "non-exhaustive" list and in no way limits the breadth of the above allegations. (*Id.* at ¶¶ 65, 69, 74, 82.)

Thus, even if the Press Release could be read as reporting that BGA has not paid any songwriters or publishers, which it cannot, that reporting is no more extensive – and would certainly not have a materially "different effect on a reader" – than the allegations in the Complaint itself. *Karedes v. Ackerly Grp., Inc.*, 423 F.3d 107, 119 (2d Cir. 2005).[6]

### B. The Press Release Does Not Transform the Filing of the Lawsuit Into a Final Judgment

BGA contends that the Press Release is not a fair and true reporting of the allegations in the Complaint, because it supposedly "transforms allegations into facts" and suggests that BGA has already been found liable. (Br. 13-15.) Critically, however, New York courts have expressly *rejected* BGA's implicit argument that the "failure to use the word 'alleged' or 'allegedly' removes the [statement at issue] from the ambit of protection afforded by the 'fair reporting'

---

[6] BGA's reliance on *Karedes* (Br. 11-13) is misplaced, as that case is readily distinguishable. In *Karedes*, a newspaper publisher reported that a government audit had determined that the plaintiff had improperly authorized the local village government to pay more than $170,000 in golf course construction costs that should have instead been paid by a private entity. 423 F.3d at 115-17. Section 74 of the New York Civil Rights Law did not protect the publisher's reporting in that case, because one of the government auditors had "expressly disclaimed any finding that the Village actually paid for expenses that should have been paid by the [private entity]." *Id.* at 118. Thus, the defendant's reporting in *Karedes* was <u>flatly contradicted</u> by the official proceeding on which the reporting was purportedly based. Here, by contrast, the Press Release closely mirrors the Complaint's allegations that BGA engaged in a "massive copyright infringement" and did not obtain proper licenses.

privilege." *Klig v. Harper's Magazine Found.*, 600899/2010, 2011 NY Slip Op 31173(U), at 10 (Sup. Ct. Nassau Cnty. Apr. 26, 2011) (citing *N.Y. Times Co.*, 49 N.Y.2d 63, 68, (1979)).

Moreover, the Press Release merely announces the filing of the lawsuit, and summarizes the allegations of the Complaint – referring back to the "lawsuit" no fewer than *five times*. (Dkt. 31-1.)  The Release also states that the lawsuit "*intends* to stop these entities use of unlicensed works" and that "*[h]opefully*, this lawsuit will bring publishers and many iconic songwriters the revenue they deserve for the use of their music."  (*Id.* at ¶¶ 2, 4) (emphasis added).  Thus, the Release indicates that liability will be determined in the *future*, and cannot possibly be read as stating that BGA's infringements have *already* been proven.  (Br. 14.)

That the Press Release merely reports on the allegations in the Complaint can also be seen from the websites cited by BGA (Br. 5.) which republished portions of the Release:

- "The NMPA has *filed a suit* on behalf of 26 music publishing companies ….  The complaint *alleges* that Wolfgang's Vault has infringed on the companies' recording copyrights ….  The complaint *maintains* that the sources from which the company acquired its recordings archive … did not include the right to sell those recordings ….  The complaint *asserts* that Wolfgang's Vault lacks both synch and mechanical licenses to the content in its store."  BILLBOARD.COM, "Wolfgang's Vault Sued by 26 Music Companies" May 27, 2015 (*available at* http://www.billboard.com/articles/business/6576183/wolfgangs-vault-sued-by-26-music-companies) (last accessed Dec. 17, 2015) (Dickstein Decl., Ex. 1) (emphasis added);

- "The NMPA is *filing a major copyright infringement case* today on behalf [of] 26 music companies.  It *alleges* that Wolfgang's Vault … has infringed on the companies' recording copyrights via streaming, downloading and physical sales.  ….  [T]he complaint *states* that the sources did not permit Wolfgang's Vault to sell those recordings.  It also *maintains* that the company lacks both synch and mechanical licenses to its recording archive."  THEMUSICNETWORK.COM, "Live Concert Archive Wolfgang's Vault Sued by 26 Companies" May 28, 2015 (*available at* https://themusicnetwork.com/news/live-concert-archive-wolfgangs-vault-sued-by-26-companies) (last accessed Dec. 17, 2015) (Dickstein Decl., Ex. 2) (emphasis added);

- "Wolfgang's Vault … *has been sued* in a New York court by the NMPA.  ….  [T]he NMPA *claims* that when the company acquires those master recordings it does not acquire the right to sell them/distribute them…..  The outcome of the suit is *going to be* vital to the valuation of Wolfgang's vault…."  ROCKOL.COM, "Wolfgang's Vault Sued by NMPA on Behalf of 26 Publishers" May 28, 2015 (*available at*

8

> http://www.rockol.com/uk/news-644286/nmpa-sues-wolfgangs-vault-on-behalf-of-26-publishers) (last accessed Dec. 17, 2015) (Dickstein Decl., Ex. 3) (emphasis added);

- "The National Music Publishers' Association is *taking legal action* against Wolfgang's Vaults and its related sites . . . over copyright concerns. . . . . It *claims* the company . . . is profiting through the exploitation of unlicensed works." MUSICALLY.COM, "Wolfgang's Vaults Faces Infringement Suit from NMPA" May 28, 2015 (Dickstein Decl., Ex. 4) (emphasis added);

- "The [NMPA] today *filed a lawsuit* in U.S. Federal Court *alleging* copyright infringement against Wolfgang's Vault. The NMPA *claims* the online live concert audio and video platform does not have proper licensing in place…." JAMBASE.COM, "NMPA Sues Wolfgangs Vault for Copyright Infringement" May 27, 2015 (*available at* http://www.jambase.com/Articles/125217/NMPA-Sues-Wolfgangs-Vault-For-Copyright-Infringement) (last accessed Dec. 17, 2015) (Dickstein Decl., Ex. 5) (emphasis added)

Far from reporting that BGA had been *found liable* for copyright infringement, as BGA claims the Press Release was understood, these articles make clear that the Release merely relayed the allegations in the recently filed lawsuit. The Press Release is thus protected by the absolute privilege under Section 74 of the N.Y. Civ. R. Law.[7]

### III. The Press Release Relays NMPA's and Plaintiffs' Opinion About the Lawsuit

When deciding whether statements constitute facts or opinion, the New York "standard in defamation actions [is] to read published articles in context to test their effect on the average reader, not to isolate particular phrases but to consider the publication as a whole." *Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 250 (1991); (Br. 16).[8]

---

[7] BGA's reliance on *Pisani v. Staten Island Univ. Hosp.*, 440 F. Supp. 2d 168 (E.D.N.Y. 2006) is misplaced. (Br. 14.) In *Pisani*, the defendant issued a press release that announced its settlement of a Medicaid fraud complaint, but also admitted "the misconduct carried out by former executives of the Hospital [including the plaintiff] that led to this settlement." *Id.* at 176. The settlement agreement itself "explicitly denies admission of those allegations [of fraud by former executives], and yet the [defendants'] statement admits the misconduct of former executives." *Id.* at 178. The release in *Pisani* thus *expressly contradicted* the settlement agreement on which it reported. Here, by contrast, the statements in the Press Release are *wholly consistent with* the allegations in the Complaint on which it reported.

[8] *See also Belly Basics v. Mothers Work*, 95 F. Supp. 2d 144, 145 (S.D.N.Y. 2000) (courts "must look to the overall context in which the statement was made"). BGA's attempt to distinguish *Belly Basics*, 95 F. Supp. 2d 144, is unavailing, as the court in that case did not even mention the

BGA contends that "there are simply no contextual clues in the broader Press Release which would tend to indicate that the statements contained therein are opinions" and that "the Press Release as a whole presents BGA's (alleged) 'massive copyright infringement' as if it were a matter of fact." (Br. 17.)  Yet, the Press Release is replete with such "contextual cues."  Both the title of the Press Release and its very first sentence signal that it is reporting on the *filing of a lawsuit* against BGA by the NMPA's members – not stating established ultimate findings of fact.  (Dkt. 31-1.)

If anything, the fact that the Press Release was issued by NMPA *reinforces* the impression that it is conveying the Plaintiffs' opinion about the litigation, and not stating unbiased facts.  The Press Release itself explains that "NMPA's mandate is to protect and advance the interests of music publishers and songwriters" and that this lawsuit is "part of NMPA's continuing effort to ensure songwriters and their music publishing partners are compensated fairly and that their rights are protected." (Dkt. 31-1 ¶¶ 5-6.)

BGA's attempt to distinguish *Karp v. Hill & Knowlton, Inc.*, 631 F. Supp. 360, 365 (S.D.N.Y. 1986) fails, as the defendant in *Karp* communicated its statements through an industry trade journal, just as Third-Party Defendants here issued the Press Release through the website of their industry trade organization, NMPA.  Moreover, BGA's suggestion that NMPA made the subject statements "*to* various Internet and print media outlets" (Br. 17) is contradicted by BGA's own pleading, which alleges that the statements were merely "*picked up and republished by* various Internet and print media outlets." (Dkt. 12 ¶ 70) (emphasis added).  And as shown in Third-Party Defendants' moving brief (Dkt. 30 at 17-18), they cannot be liable for those third-party publications.

---

inclusion of the word "seems" in holding that the statements of defendants' legal position constituted non-actionable opinion speech.

## **CONCLUSION**

For all of the above reasons, Third-Party Defendants NMPA and David Israelite respectfully request that the Court enter an Order granting their motion to dismiss the Third-Party Complaint with prejudice, and ordering such other and further relief as the Court deems just and proper.

Dated: New York, New York
December 17, 2015

                           LOEB & LOEB LLP

                           By: */s/ Barry I. Slotnick*
                              Barry I. Slotnick (BS-9796)
                              Christian D. Carbone (CC-6502)
                              Tal E. Dickstein (TD-0928)
                              Sarah Schacter (SS-0617)
                              345 Park Avenue
                              New York, New York 10154
                              (212) 407-4000

                              *Attorneys for Plaintiffs/Counterclaim-*
                              *Defendants and Third-Party Defendants*
                              *National Music Publishers' Association and*
                              *David Israelite*