UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

ABKCO MUSIC, INC., COLGEMS-EMI MUSIC INC., EMI ALGEE MUSIC CORP., EMI APRIL MUSIC INC., EMI BLACKWOOD MUSIC INC., EMI CONSORTIUM MUSIC PUBLISHING, INC. d/b/a EMI FULL KEEL MUSIC, EMI CONSORTIUM SONGS, INC. d/b/a EMI LONGITUDE MUSIC, EMI FEIST CATALOG INC., EMI ROBBINS CATALOG INC., EMI UNART CATALOG INC., JOBETE MUSIC CO., INC., SCREEN-GEMS-EMI MUSIC INC., STONE AGATE MUSIC, STONE DIAMOND MUSIC CORP., IMAGEM MUSIC LLC, PEER INTERNATIONAL CORPORATION, PSO LIMITED, PEERMUSIC LTD., PEERMUSIC III, LTD., SONGS OF PEER, LTD., SPIRIT CATALOG HOLDINGS S.A.R.L., SPIRIT TWO MUSIC, INC., WARNER-TAMERLANE PUBLISHING CORP. and WB MUSIC CORP.,

        Plaintiffs/Counterclaim-Defendants,

v.

WILLIAM SAGAN, NORTON LLC, BILL GRAHAM ARCHIVES, LLC d/b/a WOLFGANG'S VAULT, BILL GRAHAM ARCHIVES, LLC d/b/a CONCERT VAULT, BILL GRAHAM ARCHIVES, LLC d/b/a MUSIC VAULT and BILL GRAHAM ARCHIVES, LLC d/b/a DAYTROTTER.

        Defendants/Counterclaim-Plaintiffs.

---------------------------------------------------------------- X

Case No. 15 Civ. 04025 (ER) (HBP)

Hon. Edgardo Ramos

**DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE PITMAN'S MAY 2, 2017 DECISION**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. THIS ACTION AND THE ORDERS AT ISSUE .......................................................... 3

III. STANDARD OF REVIEW ............................................................................................ 8

IV. ARGUMENT .................................................................................................................. 8

    A. The Court Should Overturn the May 2, 2017 Decision Denying Defendants' Request that ABKCO Produce an Unredacted Copy of the 1974 Settlement Agreement Between ABKCO and the Rolling Stones ......................................... 10

        1. The 1974 Agreement Is Relevant to Defendants' Investigation into Ownership of the Copyrights at Issue ......................................................... 11

        2. The 1974 Agreement Is Relevant to Plaintiffs' Assertion That Defendants Did Not Properly Obtain Synchronization Licenses to Use the Audiovisual Works at Issue ...................................................... 12

        3. The 1974 Agreement Is Relevant to Defendants' Investigation into the Value of the Copyrights And Statutory Damages ...................................... 13

        4. The 1974 Agreement May be Relevant for Other Purposes, But Defendants Have Been Prevented From Undertaking the Necessary Investigation by Magistrate Judge Pitman's May 2 Decision .................. 15

V. CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BMW of North America, Inc. v. Gore*,
   517 U.S. 559 (1996) ...................................................................................................... 14

*Cyris Jewels v. Casner*,
   No. 12CV1895KAMSLT, 2016 WL 2962203 (E.D.N.Y. May 20, 2016) ............................... 9

*Dandong v. Pinnacle Performance Ltd.*,
   No. 10 CIV. 8086 LBS, 2012 WL 4793870 (S.D.N.Y. Oct. 9, 2012) ..................................... 8

*Durham Indus., Inc. v. Tomy Corp.*,
   630 F.2d 905 (2d Cir. 1980) ............................................................................................ 11

*F.W. Woolworth Co. v. Contemporary Arts. Inc.*,
   344 U.S. 228 (1952) ........................................................................................................ 13

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ........................................................................................................ 11

*Grand River Enterprises Six Nations, Ltd. v. King*,
   No. 02 CIV.5068(JFK), 2009 WL 63461 (S.D.N.Y. Jan. 12, 2009) ....................................... 8

*Hamil Am., Inc. v. GFI*,
   193 F.3d 92 (2d Cir. 1999) .............................................................................................. 11

*Howell v. City of New York*,
   No. 06-CV-6347, 2007 WL 2815738 (E.D.N.Y. Sept. 25, 2007) ......................................... 9

*L.A. Westermann Co. v. Dispatch Printing Co.*,
   249 U.S. 100 (1919) ........................................................................................................ 13

*N.A.S. Impor. Corp. v. Chenson Enter., Inc.*,
   968 F.2d 250 (2d Cir. 1992) ............................................................................................ 13

*Parker v. Time Warner*,
   331 F.3d 13 (2d Cir. 2003) .............................................................................................. 14

*Peer Int'l Corp. v. Luna Records, Inc.*,
   887 F. Supp. 560 (S.D.N.Y. 1995) .................................................................................. 13

*Russ Berrie & Co. v. Jerry Elsner Co.*,
   482 F. Supp. 980 (S.D.N.Y. 1980) .................................................................................. 11

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538 U.S. 408 (2003) ............................................................................................................14

*In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig.*,
  No. 08-CV-0333, 2009 WL 1026013 (S.D.N.Y. Apr. 8, 2009) .................................................9

*United States v. Davis*,
  No. 85-CV-6090, 1988 WL 96843 (S.D.N.Y. Sept. 13, 1988) ..................................................9

*Van Der Zee v. Greenidge*,
  2006 WL 44020 (S.D.N.Y. 2006) ..........................................................................................14

**Statutes**

17 U.S.C. § 410(c) ........................................................................................................................11

**Other Authorities**

5 Patry on Copyright § 17:109 .....................................................................................................11

Fed. R. Civ. P. 26 ....................................................................................................................8, 10

Fed. R. Civ. P. 72 ......................................................................................................................1, 8

Defendants William E. Sagan, Bill Graham Archives, LLC d/b/a/ Wolfgang's Vault and Norton, LLC ("Defendants") respectfully submit this memorandum of law in support of their Objection, pursuant to Rule 72,[1] to the May 2, 2017 Oral Decision ("May 2 Decision") issued by the Honorable Magistrate Judge Henry B. Pitman denying Defendants' request that Plaintiff ABKCO Music Inc. ("ABKCO") be required to produce to Defendants an unredacted copy of the 1974 Settlement Agreement between ABKCO and the Rolling Stones.

## I. INTRODUCTION

Magistrate Judge Pitman's May 2 Decision denying Defendants' request that ABKCO be required to produce to Defendants an unredacted copy of the 1974 Settlement Agreement between ABKCO and the Rolling Stones ("1974 Agreement") has effectively foreclosed Defendants' ability to conduct a basic investigation into ownership and the value of a significant portion of the copyrights at issue, which go to the heart of the claims and defenses in this action. According to ABKCO, the 1974 Agreement, which discusses the copyrights to all of the Rolling Stones compositions at issue in this case, allegedly shows that ABKCO—as opposed to individual band members Keith Richards or Mick Jagger—exclusively own each and every one of these musical compositions. However, because ABKCO has redacted nearly the entire document, including at least five exhibits in their entirety, Defendants have no way to ascertain or attempt to verify whether ABKCO's assertions are true, let alone lodge any challenges to such assertions.

Magistrate Judge Pitman's May 2 Decision denying Defendants a meaningful opportunity to review this highly relevant agreement is at odds with the applicable Federal Rules and relevant case law that finds unilaterally determined redactions to relevant documents wholly inappropriate. Under the proportionality standard that now governs the Federal Rules of Civil Procedure, the burden of discovery is to be weighed against the potential benefits. There is no burden here to ABKCO whatsoever in producing the 1974 Agreement to Defendants, as this objection relates to just one agreement that has already been uncovered and presented to Magistrate Judge Pitman *in*

---

[1] This and all further statutory references are to the Federal Rules of Civil Procedure unless otherwise noted.

*camera* for review. And the potential benefit in requiring production of such discovery would allow Defendants to pursue at least three critical lines of inquiry that can only be pursued from the unredacted version of this agreement. First, this agreement is relevant to Defendants' right to conduct an investigation into basic discovery regarding the ownership of the copyrights, which ABKCO must prove in this case in order to pursue its claims of alleged copyright infringement. Defendants must be given the opportunity to review documents to rebut any presumption afforded to Plaintiffs by copyright registrations through an investigation into the relevant chain of title documents. Second, though Defendants dispute whether they were required to obtain synchronization licenses for the uses at issue in this case, ABKCO asserts that they were, and if the individual members of the Rolling Stones owned the publishing rights to the compositions, they would have had the power to consent to Defendants' predecessors' use of the compositions, either expressly or impliedly by not objecting to the recordings for decades. Defendants are not able to conduct these investigations into ownership without meaningful access to an unredacted copy of the 1974 Agreement. Third, the redacted financial aspects of the agreement relate to the value of the copyrights at issue, which is squarely relevant to Defendants' investigation into potential statutory damages. Magistrate Judge Pitman's May 2 Decision expects Defendants to take ABKCO's counsel's word that ABKCO fully owns the copyrights for the compositions in the 1974 Agreement, forecloses Defendants' ability to investigate for potential value analysis, and prevents Defendants from even presenting this agreement to ABKCO witnesses during depositions.

Defendants should not be precluded from exercising their right to fully and fairly defend themselves in this action consistent with the applicable law—particularly given the substantial amount of damages Plaintiffs are seeking through this litigation and the potential impact on Defendants' longstanding business. The May 2 Decision is erroneous and contrary to law, and Defendants respectfully request that the Court reverse it and allow Defendants to obtain this fundamental discovery.

## II. THIS ACTION AND THE ORDERS AT ISSUE

In 2015, Plaintiffs filed a massive copyright infringement action against Defendants, alleging hundreds of infringed copyrights based on Defendants' lawful exploitation of live concert recordings Defendants purchased and obtained rights to. Dkt. 1 at 19 (Complaint). Defendants built their unique collection of audio and audiovisual recordings of live music performances by purchasing collections from several notable and well respected sources beginning fifteen years ago, and Defendants have been paying Plaintiffs for all requisite licenses since they began exploiting the recordings and compositions in 2007. Attempting to sweep these longstanding licenses and payments under the rug and instead seeking a huge windfall, Plaintiffs are pursuing against Defendants potential statutory damages in this action as high as $30 million, or $150,000 per work, and are essentially hoping to force Defendants out of business.

Defendants' affirmative defenses in this action include, without limitation: (i) license/consent and acquiescence, including through compulsory licensing, public performance licensing, and other implied licensing; (ii) joint authorship of the copyrights; (iii) joint ownership of the copyrights based on the rights transferred to Defendants by their predecessors—rights that were originally obtained at the time the live recordings were made; as well as (iv) laches; (v) waiver; (vi) estoppel; (vii) statute of limitations; and (viii) failure to mitigate. Dkt. 12 (Answer to Compl.); Dkt. 150 (Answer to Supp. Compl.). Plaintiffs have not moved to dismiss or for judgment on any of these defenses, which all remain pending.

Of the 209 musical compositions at issue for which Plaintiffs claim to "own or control" the copyrights, 9 were composed by members of the rock band the Rolling Stones, including Brown Sugar, Sympathy for the Devil, Gimme Shelter, Honky Tonk Woman, Jumpin' Jack Flash, Let it Bleed, Let's Spend the Night Together, Under My Thumb, and You Can't Always Get What You Want. Dkt. 43-1 (Amended Exhibit A to the Complaint). These 9 compositions, alone, are included in over one-tenth of the 1175 audio and audiovisual live concert recordings at issue in this litigation. Dkt. 43-1 (Amended Exhibit A to the Complaint); Ranahan Decl., Ex. 1 (Recording Acquisition Spreadsheet).

On September 18, 2015, Defendants submitted their first set of requests for document production to Plaintiffs with multiple requests for documents relating to the ownership or control of the copyrights in the musical compositions at issue.[2] Ranahan Decl., Ex. 2 at 11-13 (Defendants' Requests for Production to Plaintiffs). ABKCO provided some responsive documents—none of which conclusively established that ABKCO owned or controlled the copyrights to the relevant compositions (an element that ABKCO must prove to maintain its claims at all).

Defendants have been limited to uncovering circumstances surrounding the 1974 Agreement through public sources—including a widely publicized dispute between the rock band

---

[2] Specifically, Defendants made the following requests:

> Request for Production No. 2: All documents concerning the ownership or control of the copyrights in the musical compositions…
>
> Request for Production No. 3: Documents sufficient to identify the following information for each and every copyrighted work claimed by You in this Action:…The date on which You acquired the copyrighted work;…The person or entity from whom You acquired the copyrighted work.
>
> Request for Production No. 4: All documents concerning chain of title for any and all of the copyrights claimed by You in this Action…
>
> Request for Production No. 5: All documents evidencing, referring, or relating to each specific right You claim to have over any and all of the copyrighted works for which You have ownership or control.
>
> Request for Production No. 6: For each musical composition and/or sound recording at issue in this Action, produce all documents concerning agreements (including all draft agreements and executed agreements) with all persons… concerning the creation, ownership, or transfer of rights in the sound recording.
>
> Request for Production No. 8: All documents evidencing, referring, or relating to each specific right You claim to have over any and all musical compositions and/or sound recordings performed and/or created during live musical performances promoted or recorded by BGA, Bill Graham, the King Biscuit Flower Hour, the Newport Folk and Jazz Festivals, Silver Eagle Distributors, Dawson Sound Productions, the Record Plant recording studio, the Ash Grove Theatre, David Hewitt, the Great American Music Hall, Metropolitan Talent, Tramps Nightclub, and/or any related entity or entities.

Ranahan Decl., Ex. 2 at 11-13 (Defendants' Requests for Production to Plaintiffs).

the Rolling Stones and their former manager and founder of ABKCO Allen Klein over ownership to the very same compositions at issue in this lawsuit. Accordingly, Defendants wrote a letter to Magistrate Judge Pitman on January 20, 2016 notifying him that Defendants had uncovered a dispute between ABKCO and the Rolling Stones through various publicly available online sources and had asked Plaintiffs to produce any related agreements since there is clearly at least a question as to the rights that the members of the Rolling Stones had to their compositions at the time the recordings at issue were made. Dkt. 60 at 1-2 (12/20/2016 Letter). In the letter, Defendants cited to certain online articles discussing the dispute between ABKCO's founder, Allen Klein, and the Rolling Stones that resulted from Allen Klein's management of the Rolling Stones from 1965 to 1970. *Id.*; Ranahan Decl., Ex. 3 (*Rolling Stone* Article); Ranahan Decl., Ex. 4 (*Wikipedia* Page); Ranahan Decl., Ex. 5 (*Showbiz 411* Article). These sources suggested that there was at least a "co-ownership" between the individual band members and ABKCO, and that there was a settlement agreement between the parties that called into question copyright ownership of the compositions during the relevant time period. *See* Ranahan Decl., Ex. 3 (*Rolling Stone* Article); Ranahan Decl., Ex. 4 (*Wikipedia* Page); Ranahan Decl., Ex. 5 (*Showbiz 411* Article). The articles also suggest that ABKCO founder, Allen Klein, did not part with the Rolling Stones on good terms and the parties dispute culminated into a settlement agreement (that apparently is contained within the readable portion of the 1974 Agreement) that delineated the rights surrounding copyright ownership and royalties of the songs at issue in this case. *Id.*

As noted in Defendants' letter, some of the recordings at issue here were recorded in 1973, including a concert featuring "Brown Sugar," a song that was originally released in 1971, after the time when Allen Klein managed the Rolling Stones and before the settlement. Dkt. 60 at 2 (12/20/2016 Letter). Defendants thus requested that ABKCO produce the settlement agreements or other agreements between ABKCO, on the one hand, and Keith Richards and Mick Jagger on the other hand, because it appeared that settlement would have impacted the publishing rights to the songs at issue during the relevant time period. *Id.* Defendants notified the Court of this request in conjunction with their request that they be permitted to take the deposition of Rolling Stones

member Keith Richards, who co-authored the compositions at issue, for purposes of asking about this information and other topics.[3]

By the December 20, 2016 hearing before Magistrate Judge Pitman, ABKCO still had not produced the 1974 Agreement. Ranahan Decl., Ex. 6 at 8:17-21 (12/20/2016 Hearing Tr.). Even though it was clearly responsive to the chain of title discovery that Plaintiffs had agreed to provide, ABKCO claimed that it failed to produce this agreement earlier because the document supposedly "confirmed the ownership of the works in issue and therefore it's not a chain of title document." *Id*. at 9:16-18. Regardless, Magistrate Judge Pitman ordered at the December 20, 2016 hearing that ABKCO produce the relevant documents to Defendants by January 9, 2017. *Id*. at 10:21-25.

On January 9, 2017, ABKCO purported to produce the 1974 Agreement, but with so many redactions that Defendants could not determine which rights may have been retained by ABKCO, which songs were impacted and how, and what the publishing rights were with respect to the parties as a result of the 1974 Agreement. Dkt. 65 at 3 (1/17/2017 Letter); Ranahan Decl., Ex. 7 (1974 Agreement, PLAINTIFFS0052665-79). ABKCO had inexplicably redacted nearly the entirety of the 1974 Agreement, including all of Exhibits A-E. Ranahan Decl., Ex. 7 (1974 Agreement, PLAINTIFFS0052665-79, 82-83, 85-87, 89-90, 92-97). Defendants sought to resolve this issue with counsel to no avail, as Plaintiffs' counsel insisted that they had redacted only portions of the 1974 Agreement relating to the rights to the recordings and to the payments after unilaterally determining that the information is "not relevant to the issues in this case." Dkt. 65 at 3 (1/17/2017 Letter). Without the context of the 1974 Agreement, Defendants could not decipher the state of the current rights to the compositions at issue. *Id*. at 4.

In a letter filed on January 24, 2017, Plaintiffs again claimed that the "Music Publishing Copyrights" provision in the 1974 Agreement—one of the few that ABKCO left visible—showed

---

[3] Defendants subsequently served a deposition subpoena on Mr. Richards, and on February 16, 2017, Magistrate Judge Pitman granted Mr. Richards' motion to quash the subpoena, limiting Defendants' investigation of the relevant information that Mr. Richards possesses to twenty-five written questions. Dkt. 95 (2/16/2017 Order). Defendants have since submitted objections to that order to this Court, and those objections remains pending. Dkt. 106 (3/1/2017 Objections).

ABKCO's ownership of the compositions at issue. Dkt. 69 at 5 (1/24/2017 Letter). Defendants then pointed out in a letter filed on January 27, 2017 that there is simply no way that Defendants can draw that conclusion given that the titles of compositions at issue in this litigation are listed multiple times in multiple exhibits, including those that Defendants can only assume are referenced in redacted material. Dkt. 70 at 4 (1/27/2017 Letter); Ranahan Decl., Ex. 7 (1974 Agreement, PLAINTIFFS00052698, Ex. F; PLAINTIFFS00052726, Ex. H). Defendants explained that they cannot make sense of the settlement or these exhibits without any indication of how they interact with the terms of the 1974 Agreement, and that the numerous handwritten comments and deletions throughout the visible portions of the 1974 Agreement only underscore the need for context in this instance. Dkt. 70 at 4 (1/27/2017 Letter).

Defendants again raised this issue with Magistrate Judge Pitman in their February 8, 2017 letter responding to Plaintiffs' February 3, 2017 letter seeking a protective order to prevent Defendants from taking the depositions of Keith Richards and other witnesses. Dkt. 71 at 6-7 (2/3/2017 Letter); Dkt. 72 at 9-10 (2/8/2017 Letter). Defendants there emphasized their need to take Mr. Richards' deposition based, in part, on their inability to discern copyright ownership of compositions that he had co-authored through the heavily redacted 1974 Agreement. Dkt. 72 at 9-10 (2/8/2017 Letter).

The parties discussed the issue at the subsequent February 14, 2017 hearing before Magistrate Judge Pitman, where the Court acknowledged that Defendants' counsel may be in a better position to make determinations about the relevance of redacted information upon reviewing the 1974 Agreement than the Court may *in camera*. Ranahan Decl., Ex. 8 at 17:20-25 (2/14/2017 Hearing Tr.) ("**The Court: [O]bviously counsel are far more familiar with the case than I am and I may look through what you've redacted and conclude that it's irrelevant but maybe there is some length to an argument that defendant is contemplating that Ms. Ranahan might recognize that I might not.**") (emphasis added). Defendants' counsel requested that at the very least, the Court order that it produce the unredacted documents as highly confidential (though it is

7

unclear how an agreement from 40 years ago could still pose any commercial harm to ABKCO warranting such designation). Ranahan Decl., Ex. 8 at 26:13-17 (2/14/2017 Hearing Tr.).

Nevertheless, this issue remained pending until May 2, 2017, when Magistrate Judge Pitman denied Defendants' request that ABKCO produce an unredacted copy of the 1974 Agreement, or remove the redactions from any portion of the redactions whatsoever. Ranahan Decl., Ex. 9 at 13:12-16 (5/2/2017 Hearing Tr.). Defendants have exhausted their efforts to resolve this discovery dispute before Magistrate Judge Pitman, and now seek review before this Court.

### III. STANDARD OF REVIEW

Rule 72 provides that, in response to an order from a magistrate judge on a pretrial matter not dispositive of a party's claim or defense, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "A decision is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Grand River Enterprises Six Nations, Ltd. v. King*, No. 02 CIV.5068(JFK), 2009 WL 63461, at *2 (S.D.N.Y. Jan. 12, 2009) (internal quotations omitted). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Dandong v. Pinnacle Performance Ltd.*, No. 10 CIV. 8086 LBS, 2012 WL 4793870, at *3 (S.D.N.Y. Oct. 9, 2012) (internal quotations omitted).

### IV. ARGUMENT

The Federal Rules of Civil Procedure set out a broad scope for pre-trial discovery, permitting discovery regarding any non-privileged matter "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Moreover, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. The standard for discovery thus weighs in favor of granting Defendants access to the unredacted 1974 Agreement, as the benefits of this discovery far outweigh any potential burden that ABKCO might suffer in producing it without the redactions (if any). Indeed, ABKCO has already produced the unredacted agreement to Magistrate Judge Pitman *in camera*, and, although Defendants initially

8

took issue with Plaintiffs' designation of the agreement as "highly confidential" pursuant to the confidentiality order in this action, Defendants have offered to compromise by accepting that designation if they can only have the opportunity to analyze the 1974 Agreement without any redactions. Ranahan Decl., Ex. 8 at 22:11-17 (2/14/2017 Hearing Tr.).

Additionally, it is well-established that there is no right to make substantive unilateral redactions, and that any concerns about non-party privacy can be adequately addressed by a confidentiality order. *Cyris Jewels v. Casner*, No. 12CV1895KAMSLT, 2016 WL 2962203, at *5 (E.D.N.Y. May 20, 2016) ("This court finds that the magistrate judge's decision to limit redactions …was neither clearly erroneous nor contrary to law because there is no right to make substantive unilateral redactions" and "the City's concerns about non-party privacy are adequately addressed by the confidentiality order").

Even text claimed to be irrelevant may not be redacted when it is part of a relevant document or where redacting the text would make an otherwise relevant document incoherent. *See, e.g., United States v. Davis*, No. 85-CV-6090, 1988 WL 96843, at *3 (S.D.N.Y. Sept. 13, 1988) (refusing to permit "broad redactions on relevancy claims of certain material, in connection with the production of concededly relevant, related material"); *Cyris Jewels v. Casner*, No. 12-CV-1895, 2016 WL 2962203, at *4 (E.D.N.Y. May 20, 2016) ("Indeed, courts in this circuit have often rejected defendants' requests for redaction of irrelevant text within relevant documents.") (citation omitted); *In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig.*, No. 08-CV-0333, 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009) (finding that redactions "on the ground that the portion is non-responsive and irrelevant" are "generally unwise," likely to "breed suspicions," and "may deprive the reader of context"); *Howell v. City of New York*, No. 06-CV-6347, 2007 WL 2815738, at *2 (E.D.N.Y. Sept. 25, 2007) ("It is not the practice of this court to permit parties to selectively excise from otherwise discoverable documents those portions that they deem not to be relevant. To do so would require a finding of 'good cause' based on a need 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" (quoting Fed. R. Civ. P. 26(c)).

Nevertheless, Magistrate Judge Pitman rejected this authority and found that Plaintiffs apparently had an unfettered right to redact whatever Plaintiffs deemed to be irrelevant from this otherwise relevant, responsive document, regardless of how such redactions impeded Defendants' investigation into their defenses in this case. As explained further herein, Magistrate Judge Pitman's May 2 Decision is clearly erroneous and contrary to law and should be reversed.

> **A. The Court Should Overturn the May 2, 2017 Decision Denying Defendants' Request that ABKCO Produce an Unredacted Copy of the 1974 Settlement Agreement Between ABKCO and the Rolling Stones**

Defendants have explained on numerous occasions why they should be permitted to review an unredacted copy of the 1974 Agreement, including to ascertain ownership of the copyrights at issue in this litigation and to properly investigate the damages at issue, along with Defendants' affirmative defenses. Dkt. 60 at 1-2 (12/20/2016 Letter); Dkt. 65 (1/17/2017 Letter); Dkt. 69 at 5 (1/24/2017 Letter); Dkt. 70 at 4-5 (1/27/2017 Letter); Dkt. 72 at 9-10 (2/8/2017 Letter); Ranahan Decl., Ex. 8 at 11:17-25-12:16 (2/14/2017 Hearing Tr.).

Although Magistrate Judge Pitman agreed to review the 1974 Agreement *in camera*, ultimately the Court took no issue with any of the redactions Plaintiffs applied, even though these redactions render the 1974 Agreement impossible for Defendants to decipher. Ranahan Decl., Ex. 8 at 11:17-19 (2/14/2017 Hearing Tr.); Ranahan Decl., Ex. 9 at 13:12-16 (5/2/2017 Hearing Tr.). Magistrate Judge Pitman did, however, ask Plaintiffs to submit an exhibit from a related agreement from 1972 ("1972 Agreement"). Ranahan Decl., Ex. 10 at 104:3-6 (2/16/2017 Hearing Tr.) ("The Court: The 1972 agreement references [an] Exhibit H specifically -- there are a number of attachments here and I just -- specifically Page 3 at paragraph three references an Exhibit H, and I didn't see an exhibit."). In order to address Magistrate Judge Pitman's question about the 1972 Agreement, Plaintiffs submitted a lengthy declaration from an attorney directly involved in the negotiations claiming there was no such exhibit. Dkt. 108-1 (Declaration of Michael B. Kramer). And yet Defendants have still been deprived of reviewing any of these redacted documents. Given the complex nature of these agreements and their many exhibits, Defendants should not be

10

prevented from gaining any context whatsoever. Defendants have explained that the 1974 Agreement is critical to Defendants' investigations relating to copyright ownership, value, and statutory damages. Dkt. 60 at 1-2 (12/20/2016 Letter); Dkt. 65 (1/17/2017 Letter); Dkt. 70 at 4-5 (1/27/2017 Letter); Dkt. 72 at 9-10 (2/8/2017 Letter); Ranahan Decl., Ex. 8 at 11:17-25-12:16 (2/14/2017 Hearing Tr.). Since the 1974 Agreement is plainly relevant to the claims and defenses at issue for several reasons explained in more detail below, Defendants should be permitted the opportunity to actually read and analyze it.

1. <u>The 1974 Agreement Is Relevant to Defendants' Investigation into Ownership of the Copyrights at Issue</u>

The two elements that must be proven for a prima facie case of copyright infringement are (1) ownership of a valid copyright and (2) copying by the Defendant. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F. Supp. 980, 984 (S.D.N.Y. 1980). If these two elements are established, "[i]t then becomes incumbent upon defendant to rebut that prima facie case." *Russ Berrie*, 482 F. Supp. at 985.

While the issuance of a certificate of registration before or within five years of a work's initial publication creates a rebuttable presumption that the recipient is the owner of a valid copyright, 17 U.S.C. § 410(c); *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999) (presumption of ownership created by registration may be rebutted), the presumption is modest. "The prima facie status accorded by section 410(c) is slight, since the Copyright Office is merely an office of record . . . . Of necessity, the Office's examination is limited." 5 Patry on Copyright § 17:109. "[A] certificate of registration creates no irrebuttable presumption of copyright validity." *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980). Accordingly, the ownership of the copyrights to the compositions at issue is critical to this litigation. Defendants are therefore entitled to investigate all claims surrounding ownership so that the nonrebuttable presumption does not become a rebuttable one. *See id*.

Because Plaintiffs would be unable to maintain any claim of copyright infringement for a composition for which they are unable to show ownership, Defendants should be able to review

every document that Plaintiffs have access to that purports to establish—and/or potentially weighs against—their alleged exclusive ownership. Accordingly, Defendants included six requests seeking such information, and Plaintiffs agreed to produce it. Ranahan Decl., Ex. 2 at 11-13 (Defendants' Requests for Production to Plaintiffs). It is unclear why ABKCO previously withheld such a significant document in response to Defendants' repeated requests for documents relating to the chain of title of the copyrights at issue, but, since Defendants have uncovered this agreement, it is essential that Defendants be able to fully analyze it. Ranahan Decl., Ex. 8 at 11:22-12:1 (2/14/2017 Hearing Tr.) ("Ms. Ranahan: [T]his wasn't something that was voluntarily produced. We dug it up from a public reference. It should have been part of the ownership production because it absolutely impacts the songs and the rights that are at issue in this action and the way these rights are split."). The ownership to the copyrights of the Rolling Stones compositions at issue within the relevant time period is certainly within the proper scope of discovery. Defendants are therefore entitled to review an unredacted copy of the 1974 Agreement for purposes of their investigation into the chain of title for the copyrights to the compositions at issue.

> 2. The 1974 Agreement Is Relevant to Plaintiffs' Assertion That Defendants Did Not Properly Obtain Synchronization Licenses to Use the Audiovisual Works at Issue

Additionally, the 1974 Agreement is relevant to Defendants' assertion that their predecessors had permission to make use of the compositions in the audiovisual works at issue and that Defendants did not require any further synchronization licenses for these audiovisual works. The synchronization right permits audio recordings to be combined with separate video footage and, although Defendants contend that a synchronization license is not required for the use of the compositions here because there was no combining of audio with separate video footage, Plaintiffs have made such licenses relevant to this dispute. Dkt. 54 at 5 (12/5/2016 Letter). A crucial component of the permission necessary for synchronization is the legal consent of the owner who controlled the copyright in the musical composition, either through explicit consent or failure to

12

object. *Id.* Defendants have thus asserted that any evidence related to an artist's ownership of the compositions at issue is critical to Defendants' ability to prepare a meaningful defense against Plaintiffs' synchronization license claims. *Id.*[4] The 1974 Agreement is direct evidence of the rights that the members of the Rolling Stones may have had to the compositions at issue, which would render their failure to object to the recordings relevant to this case, and so Defendants should be permitted to make sense of that agreement. *Id.*

### 3. The 1974 Agreement Is Relevant to Defendants' Investigation into the Value of the Copyrights And Statutory Damages

While Defendants' position in this lawsuit is that the uses were already properly licensed and therefore Plaintiffs should not be entitled to collect any damages, this case is not bifurcated, and therefore Defendants must still fully investigate claims of damages now if they ever want to gather evidence to rebut a high claim of damages. ABKCO has redacted all monetary values in the 1974 Agreement, which are relevant to how ABKCO values the compositions at issue, which in turn is relevant to statutory damages. Dkt. 65 at 4 (1/17/2017 Letter); Ranahan Decl., Ex. 8 at 12:7-15 (2/14/2017 Tr.). This is so because, as the Supreme Court has found in copyright cases, the jury has the power to consider factors that might inform them on what they find fair and "just" when deciding where on the wide scale a plaintiff should be awarded statutory damages in a copyright case. *F.W. Woolworth Co. v. Contemporary Arts. Inc.*, 344 U.S. 228, 232 (1952) (quoting *L.A. Westermann Co. v. Dispatch Printing Co.*, 249 U.S. 100, 106 (1919)); *see also N.A.S. Impor. Corp. v. Chenson Enter., Inc.*, 968 F.2d 250, 252–53 (2d Cir. 1992) (including the value of the copyright as part of a list of non-exhaustive factors for informing the jury's determination of statutory damages); *see also Peer Int'l Corp. v. Luna Records, Inc.*, 887 F. Supp. 560, 568 (S.D.N.Y. 1995) (including "revenues lost by the plaintiffs [and] the value of the copyright" as among the factors a court may consider in awarding statutory damages).

---

[4] At one point, Magistrate Judge Pitman recognized the significance of the artists' ownership of the compositions, holding that Defendants could pursue two sample artist depositions as long as those artists owned the compositions. Ranahan Decl., Ex. 11 at 40:22-24 (12/7/2016 Hearing Tr.).

13

The 1974 Agreement is also relevant because statutory damages must "bear some relation to actual damages suffered." *Van Der Zee v. Greenidge*, 2006 WL 44020, at *2 (S.D.N.Y. 2006)). Otherwise, they risk running afoul to constitutional principles of due process. *Parker v. Time Warner*, 331 F.3d 13, 22 (2d Cir. 2003) (recognizing that "statutory damages [can expand] so far beyond the actual damages suffered that the statutory damages come to resemble punitive damages" and that, under *BMW* and *State Farm*, "it may be that in a sufficiently serious case the due process clause might be invoked") (citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574 (1996) (overturning $2 million punitive damages award where the plaintiff obtained a jury award of only $4,000 in actual damages, because such punitive damages violated the Due Process Clause of the Constitution because it was "grossly excessive" compared to the plaintiff's actual damages); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 412 (2003) (reversing punitive damages award of $145 million as unconstitutionally excessive compared to the $1 million compensatory damages award because there must be some proportionality of the punitive award to the plaintiff's actual harm).

The Rolling Stones compositions at issue represent a large portion of Plaintiffs' copyright claims and could thus have a substantial impact on the available range of statutory damages. This is because, if Plaintiffs elects statutory damages (which to date, Plaintiffs have left open as a possibility), the jury can decide that any infringement of that work is worth as low as $200 if the work is "innocent," and, even if the infringement is "willful," anywhere from $750 per work to as high as $150,000 per work. That is a huge range in which the jury will be asked to decide, and Defendants are entitled to obtain evidence in discovery to advocate for the lower end of the range for each work at issue—including the Rolling Stones compositions. Ranahan Decl., Ex. 8 at 12:7-15 (2/14/2017 Hearing Tr.).

4. The 1974 Agreement May be Relevant for Other Purposes, But Defendants Have Been Prevented From Undertaking the Necessary Investigation by Magistrate Judge Pitman's May 2 Decision

Additionally, Defendants have explained to the Court that the 1974 Agreement is relevant and could be used as an exhibit in the deposition of ABKCO's CEO, Jody Klein (Allen Klein's son), and to Defendants' joint authorship and consent defenses, among other affirmative defenses. Dkt. 70 at 4-5 (1/27/2017 Letter).[5]

Of course, as even Magistrate Judge Pitman acknowledged, it could be relevant to other issues related to Defendants' defenses as well, (Ranahan Decl., Ex. 8 at 17:20-25 (2/14/2017 Hearing Tr.)), but Defendants cannot tell by staring at black boxes of redactions. The 1974 Agreement is of no use to Defendants unless they can read enough of it to enable them to understand it. Plaintiffs contend that their ownership rights are established by one visible sliver of the 1974 Agreement titled "Music Publishing Copyrights," but the titles of the compositions at

---

[5] In the event that the Court sustains Defendants' objection to Magistrate Judge Pitman's May 2 Decision, Defendants respectfully request that the Court allow Defendants to proceed with the deposition of ABKCO witness Jody Klein. Defendants first raised the issue relating to the redactions in the 1974 Agreement with Magistrate Judge Pitman in a letter filed on January 17, 2017. Dkt. 65 at 3 (1/17/2017 Letter). On March 29, 2017, when Magistrate Judge Pitman still had not issued a decision on the matter, Defendants reserved their right to proceed with Mr. Klein's deposition after the fact deposition cutoff date of March 31, 2017 in the event that Magistrate Judge Pitman or this Court grants Defendants access to the 1974 Agreement. Dkt. 92 (Scheduling Order); Dkt. 132 (3/29/2017 Letter). Defendants should not be prohibited from proceeding with the deposition as a result of Magistrate Judge Pitman's taking over three months to deny Defendants' effort to obtain this document, which Defendants seek to use as an exhibit during Mr. Klein's deposition. Additionally, Plaintiffs will suffer no prejudice whatsoever if Defendants are permitted to proceed with the deposition of Mr. Klein, as it will not interfere with any other deadlines in this action, and there are multiple items of written discovery that were recently served and are still pending. Ranahan Decl. at Ex. 9 at 42:24-43:14 (5/2/2017 Hearing Tr.) (permitting Defendants to submit by May 16, 2017, written interrogatories to Plaintiffs related to Plaintiffs' document production and inability to produce a witness who could explain such documents that Plaintiff Spirit must respond to within thirty days, or by June 15, 2017.) Indeed, Magistrate Judge Pitman just permitted Plaintiffs to file a new supplemental complaint last month, which Defendants just filed an answer to on May 8, 2017. Dkt. 141 (Suppl. Compl.); Dkt. 150 (Answer to Supp. Compl.)

15

issue appear all over the 1974 Agreement and in multiple exhibits, and so, regardless of Plaintiffs' assertions, Defendants should be permitted to make these inquiries through proper discovery.

The Court should therefore reverse Magistrate Judge Pitman's May 2 Decision so that Defendants can investigate these critical elements of the claims and defenses at issue.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court reverse Magistrate Judge Pitman's May 2, 2017 Decision denying Defendants' request that ABKCO be required to produce to Defendants an unredacted copy of the 1974 Settlement Agreement between ABKCO and the Rolling Stones.

Dated: May 16, 2017                                    WINSTON & STRAWN LLP

                                                       By: */s/ Erin R. Ranahan*
                                                           Erin R. Ranahan
                                                           333 S. Grand Avenue
                                                           Los Angeles, CA 90071
                                                           Tel.: 213-615-1700
                                                           Fax: 213-615-1750
                                                           eranahan@winston.com
                                                           *Attorney for Defendants/Counterclaim-Plaintiffs William Sagan, Norton, LLC, Bill Graham Archives, LLC d/b/a Wolfgang's Vault, Bill Graham Archives, LLC d/b/a Concert Vault, Bill Graham Archives, LLC d/b/a Music Vault, and Bill Graham Archives, LLC d/b/a Daytrotter*