UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
ABKCO MUSIC, INC., et al.,        :
               Plaintiffs,        :  15 Civ. 4025 (ER)(HBP)
    -against-                     :  OPINION
                                     AND ORDER
WILLIAM SAGAN, et al.,            :
               Defendants.        :
---------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/31/17

PITMAN, United States Magistrate Judge:

I. Introduction

I write to resolve a dispute between the parties concerning defendants' objections and responses to 1,901 requests for admissions ("RFAs") served by plaintiffs. Plaintiffs claim that the responses are deficient and seek an Order either directing defendants to serve amended responses or deeming the requests admitted (Pls.' Letter to the Undersigned, dated May 22, 2016 (D.I. 168) ("Pls.' Motion to Compel"); see also Pls.' Reply Letter to the Undersigned, dated June 9, 2017 (D.I. 179) ("Pls.' Reply")). Defendants argue that these RFAs are improper and that, in any event, the responses they provided satisfy their obligations under Fed.R.Civ.P. 36 (Defs.' Letter to the Undersigned, dated June 2, 2017 (D.I. 176) ("Defs.' Opp.")).

II. Facts

The facts underlying this action have been set forth in previous decisions, familiarity with which are assumed. See, e.g., Abkco Music, Inc. v. William Sagan, Norton LLC, 15 Civ. 4025 (ER), 2016 WL 2642224 at *1 (S.D.N.Y. May 6, 2016) (Ramos, D.J.). Plaintiffs allege that they own or control the copyrights to hundreds of iconic musical compositions that span composers from Rogers & Hammerstein and Hoagy Carmichael to Mick Jagger and Billy Joe Armstrong. Plaintiffs further allege that defendants acquired audio-visual recordings of concerts at which the compositions owned or controlled by plaintiffs were performed and that defendants are violating plaintiffs' rights by operating websites that offer the public the opportunity to stream or download those recordings for a fee and offer for sale newly manufactured CDs, DVDs and vinyl records containing the performances. Defendants claim to have acquired the rights to reproduce these recordings, which plaintiffs dispute.

The present dispute arises out 1,901 RFAs plaintiffs served on defendants concerning plaintiffs' ownership of the copyrighted works at issue in this case. Although the parties have not submitted all the RFAs in connection with this motion, based on the samples they have submitted it appears that for each

work, plaintiffs have posed one or more RFAs seeking admissions regarding the corresponding copyright registration, songwriter agreement or subsequent transfer document. Each RFA also identifies the bates-number of the referenced document in plaintiffs' document production.

The RFAs can be divided into two categories, namely, those related to plaintiffs' copyright registrations with the United States Copyright Office and those related to plaintiff's acquisition of ownership through an assignment or transfer of a copyright registration.[1] Each RFA seeks the defendants' admission that the work was registered or transferred/assigned as stated in the referenced document. Thus, in substance, plaintiffs seek defendants' admissions as to the authenticity and accuracy of each document. Plaintiffs have indicated that the purpose of the RFAs is to invite defendants to make "specific challenges to Plaintiffs' chain of title" (Pl. Reply at 3). Defendants' responses to each of the RFAs at issue are identical -- in addition to interposing various objections, defendants state that, despite reasonable inquiry, they lack the knowledge necessary to admit or deny them.

---

[1] Because the parties have not submitted all of the RFAs, I cannot determine how many RFAs fall into each category.

Examples of the two categories of RFAs and defendants' responses are as follows:

Request No. 1

Admit that the musical composition "Besame Mucho" was registered in the U.S. Copyright Office as registration number E for 65106 in the name of Promotura Hispano Americana de Musica S.A. on or about June 5, 1941 and was first published on May 2, 1941 as reflected on the registration certificate produced as PLAINTIFFS0002148.

Response

Defendants object to this Request as overly broad and unduly burdensome. Defendants further object to this Request to the extent that it is vague, ambiguous and compound. Defendants further object to this Request to the extent that it asks Defendants to verify the authenticity of documents produced by Plaintiffs in this action, which Defendants are unable to do. Defendants further object on the grounds that this Request seeks to impermissibly shift the burden of demonstrating ownership of the copyrights at issue from Plaintiffs to Defendants. Defendants further object to the extent that this Request calls for legal conclusions. Defendants further object to the extent the information is more readily available to Plaintiffs. Defendants further object to the extent that the document speaks for itself. Subject to and without waiving the foregoing objections, Defendants respond as follows:

Defendants lack sufficient information to admit or deny this Request. Although Defendants have made reasonable inquiry, the document in question was produced by Plaintiffs, and Defendants have neither created nor been involved with the document in any way. Defendants therefore are unable to authenticate the document in question and, as a result, are unable to obtain the information necessary to enable them to admit or deny this Request.

4

Request No. 3

Admit that Peer International Corporation and Consuelo Velazquez entered into an agreement dated March 2, 1962 pursuant to which Velazquez assigned to Peer International Corporation all rights to certain musical compositions including, but not limited to, "Besame Mucho" for the renewal term of copyright, as reflected in the agreement produced as PLAINTIFFS0002138.

Response

Defendants object to this Request as overly broad and unduly burdensome. Defendants further object to this Request to the extent that it is vague, ambiguous and compound. Defendants further object to this Request to the extent that it asks Defendants to verify the authenticity of documents produced by Plaintiffs in this action, which Defendants are unable to do. Defendants further object on the grounds that this Request seeks to impermissibly shift the burden of demonstrating ownership of the copyrights at issue from Plaintiffs to Defendants. Defendants further object to the extent that this Request calls for legal conclusions. Defendants further object to the extent the information is more readily available to Plaintiffs. Defendants further object to the extent that the document speaks for itself. Subject to and without waiving the foregoing objections, Defendants respond as follows:

Defendants lack sufficient information to admit or deny this Request. Although Defendants have made reasonable inquiry, the document in question was produced by Plaintiffs, and Defendants have neither created nor been involved with the document in any way. Defendants therefore are unable to authenticate the document in question and, as a result, are unable to obtain the information necessary to enable them to admit or deny this Request.

(Defendants/Counterclaim Plaintiffs' Responses and Objections to Plaintiffs'/Counterclaim Defendants' First Set of Requests for Admission, annexed as Exhibit B to Pls.' Motion to Compel).

III. Analysis

    A. Requests for Admission
       under Fed.R.Civ.P. 36

> Federal Rule of Civil Procedure 36(a) provides:
>
> [a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to:
>
> > (A) facts, the application of law to fact, or opinions about either; and
> >
> > (B) the genuineness of any described documents.

"This procedure is designed to promote the narrowing of issues for trial, and can be a significant aid to the court as well as the parties in ensuring a shorter and more focu[s]ed trial." Sequa Corp. v. Gelmin, 91 Civ. 8675 (CSH), 1993 WL 350029 at *1 (S.D.N.Y. Sept. 7, 1993) (Dolinger, M.J.). The answering party may admit or deny a request or "state in detail why the answering party cannot truthfully admit or deny it." Fed.R.Civ.P. 36(a)(4). The rule goes on to provide that:

> The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable

inquiry and that the information it knows or can
readily obtain is insufficient to enable it to admit or
deny.

Fed.R.Civ.P. 36(a)(4); see also Tequila Centinela, S.A. de C.V. v. Bacardi & Co., Ltd., 242 F.R.D. 1, 15 (D. D.C. 2007); Henry v. Champlain Enters., Inc., 212 F.R.D. 73, 78 (N.D.N.Y. 2003); T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc., 174 F.R.D. 38, 42-43 (S.D.N.Y. 1997) (Katz, M.J.)).

"Reasonable inquiry" requires the responding party to make a reasonable effort to secure information that is "readily obtainable" from persons and documents within the responding party's control. T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc., supra, 174 F.R.D. at 43. "What constitutes 'reasonable inquiry' and what material is 'readily obtainable' is a relative matter that depends upon the facts of each case." T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc., supra, 174 F.R.D. at 43. The responding parties' obligation to make inquiries is, therefore, limited. As explained by the Honorable Theodore H. Katz, United States Magistrate Judge,

> [a]lthough, under certain circumstances, parties may be
> required to inquire of third parties in order to prop-
> erly respond to requests to admit, see, e.g., In re
> Gulf Oil/Cities Serv. Tender Offer Litig., Nos. 82 Civ.
> 5253, 87 Civ. 8982 (MBM), 1990 WL 657537, at *3-4
> (S.D.N.Y. May 2, 1990) (court finds that plaintiff must
> consult non-parties' counsel to confirm data derived
> from figures in documents produced by non-party, where
> plaintiff and non-party have parallel interests and

7

have been closely cooperating in conducting discovery
in two related cases); Al-Jundi, 91 F.R.D. at 594-95
(where, without extraordinary expense or effort, defen-
dant may be able to respond based upon information
secured from co-defendants and their counsel, such
efforts must be made), such a requirement is far from
absolute. Rather, as set forth in Rule 36, the re-
sponding party need only make "reasonable" efforts to
secure information that is "readily obtainable." See,
e.g., Al-Jundi, 91 F.R.D. at 593-94. Generally, a
"reasonable inquiry" is limited to review and inquiry
of those persons and documents that are within the
responding party's control.

T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc.,
supra, 174 F.R.D. at 43-44 (finding that "it would far exceed the
'reasonable inquiry' provision of Rule 36, to require defendant
to subpoena [Federal Deposit Insurance Corporation] documents in
Chicago, perhaps litigate the propriety of the subpoena, travel
to Chicago to review large volumes of documents, and incur
whatever additional expense might be involved in their produc-
tion"); see also Bernstein v. Principal Life Ins. Co., 09 Civ.
4925 (CM)(HBP), 2010 WL 4922093 at *3 (S.D.N.Y. Dec. 2, 2010)
(Pitman, M.J.) ("A party's obligation to respond to a request for
an admission does not usually encompass an obligation to inter-
view non-parties or otherwise seek information from
non-parties."); Diederich v. Department of Army, 132 F.R.D. 614,
619 (S.D.N.Y. 1990) (Tyler, M.J.) ("In order to avoid any further
dispute over the interpretation of this language, we hold that
'reasonable inquiry' includes investigation and inquiry of any of

8

defendant's officers, administrators, agents, employees, servants, enlisted or other personnel, who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response.").

B. Application

The RFAs posed by plaintiffs require defendants to admit not just the authenticity of numerous documents but also the accuracy of the statements contained therein, some of which relate to events alleged to have occurred more than 70 years ago. Although defendants have objected to the RFAs on several grounds, they have not refused to answer them.[2] Rather, defendants have asserted that, despite "reasonable inquiry" they are unable to authenticate each document and, therefore, they are unable to admit or deny each request. Plaintiffs argue that defendants' assertion that they conducted a reasonable inquiry is conclusory and therefore insufficient (Pls.' Motion to Compel at 3). Plaintiffs do not, however, suggest what an appropriate inquiry would be. For example, plaintiffs do not explain what defendants could or should have done to verify the date on which "Besame

---

[2]Although the parties have included arguments in their submissions regarding the validity of these objections, it is not necessary to address defendants' objections because defendants have responded to the RFAs.

9

Mucho" was first published. Given the age of the putative facts that are the subjects of the RFAs, it is far from clear that there were investigatory avenues available to defendants.

As to the first category of RFAs, plaintiffs have failed to establish that the incremental value to plaintiffs of supplemental responses outweighs the potential burden on defendants of further investigation and response. In order for defendants to investigate the authenticity and accuracy of these documents, they would be required to review each registration with the U.S. Copyright Office or to seek additional discovery from plaintiffs or third parties. However, it appears that plaintiffs can meet their initial burden of establishing ownership of each work at issue in the first category of RFAs without any admissions from defendants. As plaintiffs themselves argue, copyright registrations are self-authenticating. See Grand Upright Music Ltd. v. Warner Bros. Records, Inc., 780 F. Supp. 182, 184 (S.D.N.Y. 1991) (Duffy, D.J.), citing Fed.R.Evid. 902; Zimmerman v. Tennille, 83 Civ. 8606 (CSH), 1988 WL 42022 at *1 (S.D.N.Y. Apr. 21, 1988) (Haight, D.J.). Moreover, because a certificate of copyright registration is prima facie evidence that the copyright is valid, a plaintiff's proffer of a certificate of copyright registration is sufficient to shift the burden of proving the invalidity of the copyright to the defendant. See

Fonar Corp. v. Domenick, 105 F.3d 99, 104 (2d Cir. 1997), citing 17 U.S.C. § 410(c), Folio Impressions, Inc. v. Byer Cal., 937 F.2d 759, 763 (2d Cir. 1991), Whimsicality, Inc. v. Rubie's Costume Co., 891 F.2d 452, 455 (2d Cir. 1989) and Hasbro Bradley, Inc. v. Sparkle Toys, Inc., 780 F.2d 189, 192 (2d Cir. 1985); see also U2 Home Entertainment, Inc. v. Lai Ying Music & Video Trading, Inc., 04 Civ. 1233(DLC), 2005 WL 1231645 at *5 (S.D.N.Y. May 25, 2005) (Cote, D.J.) (defendants' unsupported assertion that plaintiff failed to prove its chain of title to works could not defeat the prima facie validity of the certificates of copyright registration)), aff'd in part, vacated in part on other grounds sub nom. U2 Home Entertainment, Inc. v. Wei Ping Yuan, 245 F. App'x 28 (2d Cir. 2007) (summary order); Bates v. Actors Heritage, Inc., 85 Civ. 8962 (DNE), 1989 WL 206430 at *1 (S.D.N.Y. Jan. 18, 1989) (Edelstein, D.J.) ("Existence of the registration certificate, however, does not create an irrebuttable presumption of a valid copyright; it merely shifts to the defendant the burden of proving the copyright is not valid."). Further, by stating that they lack sufficient information to admit or deny the requests, defendants effectively admit that they do not, at this time, possess any independent basis to challenge the authenticity or accuracy of the registration

11

certificates identified in these RFAs.³ Thus, on this record and in light of the potential value of the information, requiring defendants to undertake a further inquiry or provide further responses would be unduly burdensome. See Fed.R.Civ.P. 26(b)(1). Therefore, plaintiffs' motion to compel revised responses to the first category of RFAs is denied.

Defendants' responses to the second category of RFAs -- those related to the assignment or transfer of copyright registrations to plaintiffs -- present different issues. Like the first category of documents, these RFAs require defendants both to authenticate the documents and to stipulate the accuracy of the statements set forth therein. However, the documents in issue in this category are not public records. In some cases, the documents are decades old and the parties to some of the documents are, no doubt, long deceased.⁴

---

³Defendants note, however, that they "reserve their right to raise any challenges to Plaintiffs' ownership if and when Plaintiffs attempt to establish such ownership before the District Court . . . " (Defs.' Opp. at 2). If defendants do learn of evidence impugning the copyrights in issue that they intend to use at trial, they would have to disclose such evidence to plaintiffs promptly and voluntarily pursuant to Fed.R.Civ.P. 26(a)(1) and 26(e).

⁴For example, Consuelo Velasquez, the individual referenced in RFA No. 3, died in 2005 at the age of 88. She resided in Mexico at the time of her death. See Margalit Fox, "Consuelo Velázques Dies; Wrote 'Bésame Mucho,'" N.Y. Times, Jan. 30, 2005, available at http://www.nytimes.com/2005/01/30/obituaries/-

12

Although defendants' responses to this category of RFAs do lack detail, I do not know what efforts the defendants could have possibly undertaken to authenticate the chain of title documents and to confirm their accuracy.[5] Short of conducting third-party discovery, which is generally not required in responding to an RFA, there appear to be no steps that defendants could have taken to learn the authenticity and accuracy of documents in this second category. Given the nature of the requests at issue and the absence of any suggestion from plaintiffs as to what steps defendants could have reasonably taken, I conclude that defendants' answers to the second category of RFAs are also sufficient.

---

[4](...continued)
consuelo-velazquez-dies-wrote-besame-mucho.html?_r=0).

[5]Plaintiffs' contention that defendants could confirm the authenticity and accuracy of the documents simply by reading them is clearly wrong. Just as reading a novel does not make the events described therein real, reading a document provides no proof that the events described therein are real or are accurately described.

## IV. Conclusion

Accordingly, for all the foregoing reasons, plaintiffs' application to compel further responses to their RFAs is denied.

Dated: New York, New York
July 31, 2017

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

All Counsel