UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK

In re:                              :

ABKCO MUSIC, INC., et al.,          :   Docket #15-cv-04025-
                                        ER-HBP
              Plaintiffs,           :

         - against -                :

SAGAN, et al.,                      :   New York, New York
                                        August 8, 2017
              Defendants.           :

-------------------------------- :

                      PROCEEDINGS BEFORE
                THE HONORABLE HENRY B. PITMAN,
          UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES:

For Plaintiffs:          LOEB & LOEB LLP
                         BY:  TAL E. DICKSTEIN, ESQ.
                              BARRY I. SLOTNICK, ESQ.
                         345 Park Avenue
                         New York, New York 10154

For Defendants:          WINSTON & STRAWN LLP
                         BY:  SCOTT R. SAMAY, ESQ.
                         200 Park Avenue
                         New York, New York 10166

Transcription Service: Carole Ludwig, *Transcription Services*
                       141 East Third Street #3E
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Fax:  (212) 420-6007

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

<u>INDEX</u>

**E X A M I N A T I O N S**

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | Re-<br><u>Direct</u> | Re-<br><u>Cross</u> |
|---|---|---|---|---|
| None | | | | |

**E X H I B I T S**

| Exhibit<br><u>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | Voir<br><u>Dire</u> |
|---|---|---|---|---|
| None | | | | |

```
 1                           PROCEEDINGS                    3

 2            THE CLERK:    ABKCO Music, Inc. v. Sagan.   Counsel,

 3  please state your name for the record.

 4            MR. TAL DICKSTEIN:   Tal Dickstein and Barry

 5  Slotnick of Loeb & Loeb for the plaintiffs.   Good afternoon.

 6            MR. BARRY SLOTNICK:    Good afternoon.

 7            MR. SCOTT SAMAY:    Scott Samay with Winston &

 8  Strawn on behalf of defendants.

 9            MS. ERIN RANAHAN:    Good morning, Your Honor, Erin

10  Ranahan for all defendants.

11            THE HONORABLE HENRY B. PITMAN (THE COURT):   All

12  right.  Good afternoon.

13            All right, we are here to resolve two discovery

14  issues.  Let me just go over the relevant correspondence

15  that I have I have a letter from Mr. Dickstein dated May 22;

16  a letter from defendant signed by Ms. Ranahan dated June 2;

17  and a second letter from Mr. Dickstein dated June 9.  I take

18  it that's the universe of relevant correspondence?

19            MR. DICKSTEIN:  It is, your Honor.

20            THE COURT:  All right.  Okay.  All right, the

21  first issue are the quarterly financial reports that are

22  referenced at page 3 of plaintiff's May 22 letter.

23            Let me hear from plaintiff first.  Then I guess

24  one of the questions I have is is there information in these

25  quarterly financial reports that is somehow different from
```

2  the financial documents that have already been produced?

3  And if so, maybe you can tell me about what those

4  differences are?

5           MR. DICKSTEIN:  Sure, your Honor.

6           Obviously, we don't know all the differences

7  because we haven't seen these quarterly financial reports.

8  But the way we first discovered them was during the course

9  of my deposition of defendant Sagan, the President and CEO

10  of the defendants, I was showing him profit and loss

11  statements, which defendants have produced.  And those

12  profit and loss statements do contain some rather large

13  expenses, which I take it defendants are going to seek to

14  deduct should the plaintiff seek an award, a disgorgement of

15  profits award.  And Mr. Sagan, during his deposition, he

16  said, Well, I haven't seen that exact document, but I've

17  seen something like it, and he mentioned these four entity

18  reports -- I think he referred to them as -- which he

19  receives on a quarterly basis.  And on further questioning

20  he explained these entity reports relate to four of the

21  websites that the defendants operate, Wolfgang's, Concert

22  Vault, Day Trotter, and the fourth and Paste magazine.  The

23  first three of those are websites that are squarely at issue

24  here.  And it seemed clear, based on the course of the

25  questioning of Mr. Sagan, that they contain some element of

1                          PROCEEDINGS                    5

2  financial information about those entities.  He went on to

3  explain that certain large expenses -- I think some of the

4  same expenses that we've seen in the profit and loss

5  statements -- are not allocated to the individual websites

6  in these quarterly reports that he was testifying about.

7          So to the extent, you know, certain expenses are

8  not being allocated in defendant's own internal business

9  documents, it would certainly go to whether they can deduct

10 those expenses from an award of profits.  There are things

11 like Internet operation, duplication and the remixing and

12 remastering of the physical tapes that the defendants have

13 acquired over the years.  These are the types of expenses

14 Mr. Sagan testified are not allocated to individual

15 websites in these four entity reports.

16         THE COURT:  But other expenses were allocated to

17 individual websites in the entity reports?

18         MR. DICKSTEIN:  They're not.  That's why we think

19 they might be relevant.

20         THE COURT:  I mean there were no expenses

21 allocated to the individual websites in the quarterly

22 reports?  And I know you haven't seen them.  I'm trying to

23 probe your recollection of Mr. Sagan's testimony here.

24         MR. DICKSTEIN:  My recollection is that he

25 identified some large expenses that are not allocated.  I

```
 1                        PROCEEDINGS                6
 2   don't know that it means that there aren't any expenses
 3   allocated in those reports.  I haven't seen them, so I don't
 4   know.
 5            And maybe, your Honor, the overarching point is,
 6   you know, these are quarterly reports.  We're talking about
 7   actually three quarterly reports.  The one for Paste
 8   magazine we don't think it's relevant; that's not a website
 9   that's really at issue here.  So we're talking about three
10   reports on a quarterly basis.  And I understand they may not
11   keep these forever, but, you know, we'd like to know if they
12   have them going back three years before the lawsuit's filed,
13   so --
14            THE COURT:  And you want them for what period of
15   time?
16            MR. DICKSTEIN:  Going back -- so that would be May
17   of 2012 to the present would be our request.
18            THE COURT:  All right.  Anything else you want to
19   tell me before I hear from Mr. Samay?
20            MR. SAMAY:  Samay, correct.
21            THE COURT:  Before I hear from Mr. Samay?
22            MR. DICKSTEIN:  Not on that issue, your Honor.
23            THE COURT:  All right, Mr. Samay.
24            MR. SAMAY:  Good afternoon, your Honor.
25   Ms. Ranahan sends her regrets.  She had a baby girl eight or
```

```
 1                         PROCEEDINGS                    7

 2   nine days ago.

 3             THE COURT:  Oh, wonderful.

 4             MR. SAMAY:  You're stuck with me.

 5             THE COURT:  I'm sure everyone is a fine attorney.

 6   And my congratulations to Ms. Ranahan.  Go ahead.

 7             MR. SAMAY:  Thank you.

 8             So defendants have produced an enormous amount of

 9   financial information, including financial information

10   going back to 2012, broken down by expense category.  I

11   think there are about 70 different expense categories.  All

12   the revenues are broken down into many different categories

13   of revenue.  We have provided all the underlying documents,

14   all the contracts regarding payments, the contracts

15   regarding acquisition.  So they have all of the relevant

16   information that is going to be utilized.

17             They are now seeking these reports since --

18   they've known about since at least the beginning of

19   February -- now because there wasn't any explanation in the

20   opening letter as to why they needed them.  Their reply

21   letter said that it's because they need this entity-level

22   detail about expenses.  But if you look at what Mr. Sagan

23   said, they asked, "Were they profit and loss statements with

24   respect to those four entities; is that what you're

25   referring" -- and I'm reading from page 350 of his
```

```
 1                          PROCEEDINGS                    8
 2   deposition transcript.
 3            And then he went along to say, "No, I wouldn't
 4   call them profit and loss statements because they" -- and he
 5   said that they weren't because they didn't include a whole
 6   host of expenses.  And these expenses are things like the
 7   acquisition of the materials, all of which should be
 8   deductible expenses.  And to the extent they're suggesting
 9   that because these things are not recorded on the reports
10   that he received relating to these specific entities, that
11   they're not -- you somehow don't have to take into
12   consideration things like the cost of the materials, the
13   licensing, all the major expenses.  It's just a -- it's a
14   report that doesn't include these things because it's not as
15   detailed as the information that we provided.
16            THE COURT:  Well, why should the plaintiffs not be
17   permitted to argue that the exclusion of these expenses from
18   the quarterly reports is a relevant fact for the fact finder
19   to consider in determining what expenses are deductible?
20   That's the way the defendants keep their books.  Why is that
21   not something that --
22            MR. SAMAY:  It's not the books --
23            THE COURT:  -- the plaintiffs can argue?
24            And I know you disagree with their conclusion, but
25   the issue here is really, I guess, one of relevance and
```

```
 1                        PROCEEDINGS                    9
 2   burden.
 3             MR. SAMAY:  No -- well, I want to be clear:
 4   They've gotten the books.  They've got the actual profit and
 5   loss statements that roll up that do include all those
 6   expenses.  Because there are interim reports that are sent
 7   around that are not profit and loss documents, they are not
 8   the financials of the company, that reflect revenues and
 9   other things that they've made, all of which they have in
10   the actual profit and loss statements, that somehow because
11   there is an abbreviated report that talks more about, you
12   know, what revenues are being brought in, that somehow
13   expenses which are appearing on the actual books and profit
14   and loss statements aren't deductible, it's not relevant in
15   any way, shape or form.  And they have all of these
16   supporting, underlying documents already about those
17   expenses:  the actual contracts, the invoices, every bit of
18   detail that they could possibly want.  We've gone back and
19   supplemented our production.
20             THE COURT:  Do the quarterly reports have a title?
21             MR. SAMAY:  I don't know that they do.
22             THE COURT:  Okay.  Go ahead.
23             MR. SAMAY:  And in terms of the information we've
24   received from the other side, we actually sought more
25   detailed information and weren't allowed to get that
```

```
 1                         PROCEEDINGS                    10
```

 2    information.  We didn't get the contracts, we didn't even

 3    get the stuff that we provided, much less every piece of

 4    correspondence that relates to something financial in the

 5    company.  It is not something that's needed.  It's not

 6    something that's demonstrated to be relevant in any way,

 7    shape or form.  And if they wanted it, they could have asked

 8    for it and come before your Honor sometime after early

 9    February, when they found out about it, instead of now when

10    it's only going to delay our moving towards summary

11    judgment, which, you know, we're finally getting to.

12              THE COURT:  Well, I'm still not sure I understand

13    why it's not relevant.  Why isn't it, you know, a brick in

14    their wall, the fact that the defendants didn't allocate

15    costs in the quarterly reports, although they did, I guess,

16    in some larger P & L?

17              I mean, I understand your argument that -- but,

18    you know, again, I guess the question here is relevance and

19    burden.  I mean, why are they not entitled to make that

20    argument?

21              MR. SAMAY:  Well, they have the actual profit and

22    loss statement by account code so that there is no potential

23    argument that these things were somehow not booked, somehow

24    not expensed.  They've got it down to, you know, four-digit

25    codes on many pages of documents for all the expenses.  The

```
 1                      PROCEEDINGS                    11
 2   fact that some of these large expenses, like the audio and
 3   video prep costs and acquisition costs and all those things
 4   which are -- I don't think they're going to say they're not
 5   costs of the business in doing this.  Is the argument simply
 6   that because they weren't on a piece of paper talking about
 7   revenues, that they're somehow not expenses?
 8             THE COURT:  I think that that's the argument they
 9   want to make.  I mean, why is that an inappropriate
10   argument?
11             MR. SAMAY:  Because on that argument you could get
12   every piece of -- every e-mail, every document, every piece
13   of financial information that discusses any finances and
14   then argue to someone that, "Well, it talked about finance
15   X; it didn't talk about finance Y.  Finance Y is not part
16   of the allocable books and records."  They have the actual
17   books and records.  And they certainly haven't given us
18   any of the information about any of the detail of their
19   costs and every e-mail that --
20             THE COURT:  No, but discovery is not a mirror-
21   image process.  I mean, you know, the fact that certain
22   discovery from one side may be appropriate doesn't mean
23   that discovery from the other side is appropriate.  I
24   mean, you know, the classic example I guess are the
25   plaintiff's tax returns in a personal injury action.  You
```

```
 1                        PROCEEDINGS                    12
 2   know, if the plaintiff is claiming lost income, his tax
 3   returns would be relevant.  You know, ordinarily, the
 4   defendant who ran the plaintiff over, ordinarily
 5   defendant's tax returns are not.  So, I mean --
 6            MR. SAMAY:  I --
 7            THE COURT:  You know, I mean, to say that they
 8   haven't produced the same documents I'm not sure really is
 9   the critical issue here.
10            MR. SAMAY:  Fully understand the point, but the
11   makeup of the license fees and things that could go to
12   damages is relevant.  And because it was this detailed
13   information that was less relevant than the documents that
14   they put together for purposes of this litigation to
15   summarize their expenses, we were denied those documents.
16   And they didn't produce them, and they argued that, jeez,
17   it's not relevant.  And I think that that argument is
18   germane to what your Honor has to decide today.  It may
19   not be identical; it's not a mirror.  You're right, 100%.
20   In certain cases, it's not.  Here they've got the actual
21   profit and loss statements down to expense code.  We've
22   gone through enormous undertaking to get and supplement
23   all these documents, and now they're going on this
24   expedition to get these quarterly reports because they
25   supposedly don't contain information that I think everyone
```

```
 1                          PROCEEDINGS                    13

 2  in the room would agree is an expense.

 3          THE COURT:  Let me hear from Mr. Dickstein.

 4          MR. DICKSTEIN:  Sure, your Honor.  First on the

 5  timeliness of when we raised this, it's true; I think

 6  Mr. Sagan's deposition was taken in February.  I had e-

 7  mail correspondence with Ms. Ranahan in the ensuing

 8  months.  I thought we were going to agree that we were

 9  going to get these.  During the deposition I believe I

10  made the request, and counsel said -- I don't know if it's

11  in the material I provided -- but I believe counsel said,

12  you know, Write to us and we'll look at that.  And we did.

13  And we thought we were going to agree to this, and so we

14  had to bring it up with your Honor when defendants would

15  not agree.

16          We're not seeking every piece of correspondence

17  here, we're not going on an expedition.  We're not seeking

18  the underlying salary payment or a receipt from a specific

19  vendor.  Defendants have produced a fair amount of that.

20  I don't know that it's been totally complete, but that's

21  not what we're looking for here.  We're looking for a

22  discreet set of summary documents which I think defendants

23  acknowledge contain revenue information.  Counsel

24  acknowledged that here.  We don't know what's on it,

25  what's not on it.  But it has revenue information.
```

PROCEEDINGS                    14

 2            And it's not only that it only contains revenue

 3   information.  My reading, you know, of Mr. Sagan's

 4   deposition is that those certain expenses are not

 5   allocated to individual entities on these statements.  So

 6   it's not that -- again, this is from *prima facie* evidence

 7   based on the deposition.  It's not simply that these

 8   reports only contain revenues and don't contain expenses;

 9   it's that they choose not to allocate certain very large

10   expenses to specific entities.  I think that's certainly a

11   fair reading of the testimony.

12            And, you know, your Honor's right; if ultimately

13   a fact finder thinks we're wrong and defendants are

14   entitled to deduct these very large expenses, then so be

15   it.  But I think we're entitled to see the documents to

16   make the argument.

17            THE COURT:  Do we know anything about the

18   expenses that are not listed on the quarterly reports?  I

19   mean, is there really a colorable -- where I'm going is is

20   there really a colorable argument that these are not

21   deductible expenses?

22            MR. DICKSTEIN:  Well, if defendants are not

23   seeking to deduct them, then that would be the end of this

24   conversation, if we could have a stipulation to that

25   effect.

```
 1                        PROCEEDINGS                    15
 2          THE COURT:  No, I'm -- do you know anything
 3   about the nature of these expenses that are not reflected
 4   on the quarterly reports?
 5          MR. DICKSTEIN:  I do, your Honor.  And the issue
 6   is not that the expenses were not incurred.  You know, I
 7   take defendants at their word that these are documents
 8   produced from their business records.  The question, I
 9   think, is whether they can be allocated from the profits
10   they've earned from the compositions at issue that are
11   being exploited on the specific websites at issue.  You
12   know, a defendant, I don't believe, is entitled to deduct
13   their overhead expenses, in other words, if a copyright
14   infringement claim were to prevail on a disgorgement of
15   profits theory.  So that's really the issue, your Honor,
16   is just whether they are allocable to specific
17   infringements infringing works that are on specific
18   websites.
19          MR. SAMAY:  And I believe we're talking --
20          THE COURT:  Go ahead.  I want to give both sides
21   an equal number of chances.  Go ahead.
22          MR. SAMAY:  No, I don't think we're talking about
23   websites.  We're not talking about, you know, some
24   separate freestanding company not deducting expenses
25   because things are reported about revenues relating to
```

1
2  websites.  It has nothing to do with what's deductible as

3  an expense.  And the things that he testified about were

4  the mastering the coloring correction, the making of the

5  tapes, the building of the websites, the acquisition, the

6  mixing of the materials that are at issue.  Those are all

7  direct expenses that are expenses that relate 100% to the

8  accused products.  I can't believe there's a colorable

9  argument that those things are not deductible.

10          MR. DICKSTEIN:  If I might respond, your Honor?

11          THE COURT:  All right, very briefly.

12          MR. DICKSTEIN:  Yes, very briefly, there are a

13  host of websites that defendant operate beyond the ones

14  that we allege to be infringing.  Just one, for example,

15  is Paste magazine, which I think contains primarily

16  articles about the music industry.  So to the extent

17  something is allocated to that website as opposed to the

18  four that are at issue, that's a very real piece of

19  evidence that we're entitled to present on the issue of

20  disgorgement of profits and whether expenses are

21  deductible from those profits.

22          MR. SAMAY:  And I'll just lastly note that on the

23  documents profit and loss statements that we produced Paste

24  expenses are culled out separately.  Paste editorial 6920

25  is one example.  Rent for Paste 6406 and the expense

```
 1                      PROCEEDINGS                    17
 2   codes.  There are separate expense codes for Paste, which
 3   has all been produced.
 4             THE COURT:  Well, ultimately, at the end of the
 5   day, I'm not sure how convincing the plaintiff's argument
 6   is going to be here with respect to the deductibility of
 7   these expenses.  But that's really not the issue here.
 8             The issue here is whether or not the documents
 9   are relevant, whether or not they're privileged and
10   whether or not the production of them is proportional to
11   the case.  There's no claim of privilege here, so that one
12   goes out the window.
13             They are relevant.  Again, it's not my job in a
14   discovery dispute to rule based on whether or not I think
15   the party's argument is ultimately going to be persuasive
16   or not.  The question is whether or not it's relevant.
17             As I understand the plaintiff's argument here,
18   the plaintiff is arguing that the fact that the defendant
19   did not include these expenses in the quarterly reports
20   bears on whether or not the expenses are deductible in
21   calculating the defendant's profits.  I think it's an
22   argument that the plaintiffs can make, and I think the
23   information is relevant.  Again, the issue here is -- and
24   given the stakes in this case, which are millions and
25   millions of dollars, I think a proportionality argument is
```

1                       PROCEEDINGS                    18

2 not going to prevail.

3            So I am going to direct that the quarterly

4 reports be produced here.  What were the entities you were

5 looking for again, Mr. Dickstein?

6            MR. DICKSTEIN:  It's Wolfgang's, which was

7 formerly known as Wolfgang's Vault; Concert Vault; and Day

8 Trotter.

9            THE COURT:  Okay.  How much time do you need to

10 produce those, Mr. Samay?

11           MR. SAMAY:  I have no idea about how they're

12 stored or whether they even exist for periods before the

13 complaint, back to 2012, as they're asking.

14           THE COURT:  All right.

15           MR. SAMAY:  I can work with counsel to figure out

16 a --

17           THE COURT:  All right, we'll set a deadline of

18 three weeks down the road, which would be the 29th, I

19 think.  Okay.  All right.

20           The second issue for discussion today are --

21 well, they're some documents that were the subject of an

22 order that I issued in May, which are documents relating

23 to -- well, I want to find the way I articulated it in

24 May.  Documents reflecting the licensing payments

25 defendants have made to plaintiffs with respect to the

```
 1                      PROCEEDINGS                    19
 2  compositions at issue here.
 3           MR. SAMAY:  Your Honor?
 4           THE COURT:  Yes.
 5           MR. SAMAY:  We might be able to short-circuit
 6  this.
 7           THE COURT:  Okay.
 8           MR. SAMAY:  We discussed it in the hallway
 9  outside before we came in, and if the plaintiffs are
10  willing to stipulate to the receipt of payments we've
11  identified -- and they've indicated that they are and
12  that's not the basis of their opposition or a summary
13  judgment motion -- then we would not seek to have them
14  incur the burden of producing all of their documents
15  related to that.
16           But if that's where we are, then I think we've
17  resolved the issue.  But I'll let counsel for plaintiff
18  confirm that.
19           MR. DICKSTEIN:  Sure.  Thank you.
20           I think what we are prepared to agree to is that
21  for purposes of summary judgment we're not going to
22  dispute that these payments which are listed on certain
23  exhibits to the Lundberg declaration in support of
24  defendant's motion for summary judgment, we're not
25  disputing that those payments were made.  So --
```

```
 1                        PROCEEDINGS                    20
 2            THE COURT:  But is that stip limited to the
 3   purpose of the summary judgment motion?
 4            MR. DICKSTEIN:  It would be, your Honor.
 5            THE COURT:  And if summary judgment is denied
 6   and the case goes to trial?
 7            MR. DICKSTEIN:  I think we're talking --
 8            MR. SAMAY:  It would be our position we need
 9   those documents.
10            THE COURT:  What did -- I just didn't hear you.
11            MR. SAMAY:  I said it would be our position that
12   we need those documents.
13            THE COURT:  Mr. Dickstein?
14            MR. DICKSTEIN:  I think --
15            THE COURT:  By the way, I have no insight as to
16   what Judge Ramos is going to do.  I don't know whether --
17   you know, what the action on the summary judgment motion
18   is going to be.  But it sounds like if it's denied, I
19   don't know why the need goes away.
20            MR. DICKSTEIN:  Well, I guess in that respect,
21   your Honor, I would fall back on the argument that I was
22   planning to make, which is that the defendants have moved
23   for summary judgment on this exact issue.  You know --
24            THE COURT:  You're reserving your right to
25   contest that at trial?
```

```
 1                      PROCEEDINGS                    21

 2            MR. DICKSTEIN:  After they've essentially

 3   conceded they have all the evidence that they feel they

 4   need.  I think that's the effect of --

 5            THE COURT:  I don't find that argument

 6   particularly compelling.  I mean, in the absence of a

 7   stipulation, I'm not -- I mean, I presume in opposition to

 8   the summary judgment motion, you're arguing that there is

 9   a genuine issue of fact.

10            MR. DICKSTEIN:  Well, no, your Honor, not on this

11   issue of payment.  Our position is not going to be on

12   summary judgment that these payments were not made.  Our

13   position simply the effect of the payments.  We contend,

14   and we will contend that they were essentially made under

15   fraudulent circumstances and not sufficient to give rise

16   to a license for defendant's activities.

17            So maybe we see where we are after summary

18   judgment.  Perhaps --

19            THE COURT:  Well, there's already an outstanding

20   order that these -- that the documents be produced.

21            MR. DICKSTEIN:  Right, your Honor.  And what

22   happened was, I think it was five days before the order,

23   before we were due to produce them pursuant to the order,

24   the defendants filed a motion for summary judgment.  We

25   then wrote to your Honor before the deadline and said, you
```

```
 1                         PROCEEDINGS                    22
 2   know, What's going on here?  The defendants have just
 3   moved for summary judgment on the very issue on which
 4   they're seeking these payment documents.
 5            And there's certainly support.  You know, other
 6   district courts in the Second Circuit have recognized
 7   pretty clearly that when a party move for summary judgment
 8   on an issue, they can't continue to seek discovery.  Your
 9   Honor, I'm sure, is familiar with Rule 56 -- I think it's
10   D now -- which provides a mechanism for a non-party to
11   seek discovery in order to oppose a summary judgment
12   motion, but --
13            THE COURT:  How would a non-party oppose --
14            MR. DICKSTEIN:  Excuse me.  I misspoke.  Excuse
15   me, your Honor.  For a non-movant to oppose a summary
16   judgment motion.  But there's no procedure for the moving
17   party to seek discovery.
18            THE COURT:  Well, no, but these were ordered
19   produced before the summary judgment motion was made.
20            MR. DICKSTEIN:  That's correct.
21            THE COURT:  Well, I mean, look, if you're
22   willing to enter into the stipulation for the purposes of
23   summary judgment, maybe it's something that we don't need
24   to do now.  But if summary judgment is denied, I think
25   these are going to need to be produced in very short
```

```
 1                        PROCEEDINGS                    23
 2   order.
 3              MR. DICKSTEIN:  That approach would be fine, your
 4   Honor, with us.
 5              THE COURT:  All right.  I mean, I'm talking,
 6   like, a week.
 7              MR. DICKSTEIN:  After denial of summary judgment,
 8   if that were the case?
 9              THE COURT:  Yes.
10              MR. DICKSTEIN:  That would be acceptable to us.
11              THE COURT:  Mr. Samay?
12              MR. SAMAY:  I'm not sure what I'm hearing in
13   terms of how they're going to oppose our summary judgment
14   motion with respect to payments.  And if they're planning
15   on opposing our summary judgment motion with respect to
16   payments, then I would want that the order documents be
17   produced before we get to that point in summary judgment.
18              THE COURT:  Maybe, Mr. Dickstein, you can
19   elaborate a little bit, then on the plaintiff's position
20   with respect to the payments made by defendants?
21              MR. DICKSTEIN:  Certainly, your Honor.
22              Our position is not that the payments have not
23   been made; it's simply the effect of those payments.  So
24   we have no intention of disputing on summary judgment that
25   the payments defendants have pointed to that were made to
```

 1   plaintiffs were actually made.  And there are -- I

 2   mentioned to Mr. Samay before the conference -- there are

 3   exhibits to the Lundberg Declaration which show a series

 4   of checks that were sent to the various plaintiff music

 5   publishers.  And we're not planning on disputing that.

 6         THE COURT:  And when you say your argument

 7   focuses on the effect of the payments, can you elaborate a

 8   little bit on that?

 9         MR. DICKSTEIN:  Certainly, your Honor.  The

10   payments were primarily made pursuant to what defendants

11   claim are compulsory licenses under Section 115 of the

12   Copyright Act.  So you pay something like nine cents per

13   song per distribution or download or streaming.  It's all

14   set by statute and regulation.  And so they hired a

15   vendor, essentially two vendors in succession, to make

16   those payments to various music publishers on their

17   behalf.  I think those are the payments that we're talking

18   about.

19         THE COURT:  And your argument regarding the

20   payments is what?

21         MR. DICKSTEIN:  The argument --

22         THE COURT:  Summary judgment, you're admitting

23   the payments that they've identified were made --

24         MR. DICKSTEIN:  Right.

```
 1                        PROCEEDINGS                    25
```

2         THE COURT:  -- but these don't get them home,

3   don't result in summary judgment for defendant because --

4   if you can complete that sentence?

5         MR. DICKSTEIN:  Sure.  For a variety of reasons.

6   First of all, in order for a compulsory license to arise

7   under Section 115, the music user has to send a Notice of

8   Intentions, a very specific document that's set forth in the

9   regulations, they have to send that out before they make use

10  of the musical composition, before they allow downloads,

11  streaming.  That wasn't done here.  In fact, I think

12  defendants have acknowledged in their summary judgment

13  papers that their process was the exact opposite.  They

14  would start distributing recordings of the plaintiff's

15  musical compositions and then provide a usage report to

16  their vendors and the vendors would then send out these

17  Notices of Intention.  That's reason No. 1.

18         Reason No. 2, this whole compulsory mechanical

19  licensing regime under the Copyright Act applies only to

20  audio recordings; it does not apply to audio-visual

21  recordings.  And I think it was something like 70% of the

22  musical works that are at issue here have been exploited in

23  video format by the defendant.  So it would not be eligible

24  for compulsory licenses for those exploitations.

25         THE COURT:  All right.  Well, Mr. Samay, if that's

```
 1                        PROCEEDINGS                    26
 2   their argument, do you need the documents reflecting the
 3   licensing payments?
 4            MR. SAMAY:  I think I do because if their internal
 5   documents reflect that they were received and were paid and
 6   licensed, then that could be interpreted by somebody on the
 7   jury as an acceptance --
 8            THE COURT:  No, we're talking about summary
 9   judgment now.  Summary judgment is denied; you get them.
10   But for purposes of summary judgment, they are willing to,
11   if I understand Mr. Dickstein correctly, they're willing to
12   concede that the payments that you claim in your summary
13   judgment papers were made, were in fact made and received.
14            Right?  That's what you're offering to do,
15   correct?
16            MR. DICKSTEIN:  Correct, your Honor.
17            MR. SAMAY:  Well, if we get the documents after
18   summary judgment, then that would be fine with us, if we
19   were to lose summary judgment.
20            THE COURT:  All right.
21            MR. DICKSTEIN:  Your Honor, the only one other
22   issue I want to raise, because I can see this happening,
23   if -- and we don't expect this to be the case -- but if our
24   summary judgment motion is denied, it sounds like we're
25   going to have a very short turnaround to produce these.  I
```

2 would just ask that --

3          THE COURT:  Well, I mean, they were originally due

4 by May 23, so --

5          MR. DICKSTEIN:  Your Honor, I completely

6 understand.  I guess the one issue that we had in discussing

7 this with our clients before that deadline, before

8 defendants moved for summary judgment, was a time frame.  If

9 we could limit this possibly to three years before the

10 lawsuit was filed, which is sort of in the rule of thumb

11 we've been using, I think that would alleviate to a large

12 degree the burden that we're feeling of having to produce

13 these documents.

14          THE COURT:  Three years before the lawsuit,

15 Mr. Samay, does that work?

16          MR. SAMAY:  I will notify Mr. Dickstein within 24

17 hours if it does not.  I need to consult with Ms. Ranahan

18 because I'm just not as familiar with it as she is.

19          THE COURT:  All right.  Well, I'm going to limit

20 it to three years before the lawsuit, that they've got to be

21 ready to produce them within seven calendar days after the

22 decision on the summary judgment motion if summary judgment

23 is denied, limited to three years before the lawsuit through

24 today, through August 8.

25          All right?  Okay.  I think that takes care, then,

```
 1                        PROCEEDINGS                    28
 2   of both issues.
 3            Anything else we should be considering from
 4   plaintiff's point of view?
 5            MR. DICKSTEIN:  No, thank you, your Honor.
 6            THE COURT:  Mr. Samay?
 7            MR. SAMAY:  None here, your Honor.
 8            THE COURT:  Okay.  All right.  Well, I hope
 9   Ms. Ranahan has a speedy recovery and she's back in action
10   soon.
11            MR. SAMAY:  Me, too.  Thank you.
12            THE COURT:  Okay.  Thank you, all.
13            MR. DICKSTEIN:  Thank you, your Honor.
14            (Whereupon, the matter is recessed.)
15
16
17
18
19
20
21
22
23
24
25
```

29

C E R T I F I C A T E

     I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the United States District

Court, Southern District of New York, ABKCO MUSIC, et al. v.

SAGAN, et al., 15-cv-4025-ER-HBP, was prepared using digital

electronic transcription equipment and is a true and

accurate record of the proceedings.

Signature_____

Date:   August 16, 2017