UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ABKCO MUSIC, INC.,

Plaintiff,

v. 15 CV 4025 (ER)

WILLIAM SAGAN, et al.,

Defendants.

------------------------------x

New York, N.Y.
December 14, 2017
11:40 a.m.

Before:

HON. EDGARDO RAMOS,

District Judge

APPEARANCES

LOEB & LOEB LLP
Attorneys for Plaintiffs
BY: BARRY I. SLOTNICK
TAL E. DICKSTEIN

WINSTON & STRAWN LLP
Attorneys for Defendants
BY: SCOTT R. SAMAY

(Case called)

MR. SLOTNICK: Barry Slotnick and Tal Dickstein, of Loeb & Loeb, for the plaintiffs.

THE COURT: Good morning.

MR. DICKSTEIN: Good morning.

MR. SAMAY: Scott Samay, from Winston & Strawn, on behalf of the defendants.

THE COURT: Good morning to you.

MR. SAMAY: Good morning.

THE COURT: I guess this matter is on for a premotion conference.

So, who wants to move to do what? Mr. Samay, is it you?

MR. SAMAY: It is us, your Honor.

THE COURT: Tell me what you would like to do.

MR. SAMAY: We would like to move to strike documents that were produced in a reply brief for the first time. Our position on this is pretty straightforward. This case has been going on for two and a half years. Over two years ago, we asked for all documents relating to ownership and all documents relating to chain of title. When we did that, we were met with the response that you typically see, which was, we're not going to give you all documents, we're going to give you documents sufficient to show our ownership and the correctness of our chain of title.

THE COURT: When was that?

MR. SAMAY: That was in November of 2015.

Since that time, plaintiffs produced a great many number of documents but they didn't produce all the documents that were relevant to the chain of title.

THE COURT: When you received that response -- because I know Judge Pitman has been working very hard with you all -- did you object to that, that you are not going to get all documents, you're going to get documents sufficient to establish title?

MR. SAMAY: Your Honor, to be quite candid, I don't know.

THE COURT: Okay.

MR. SAMAY: But from our perspective, I don't think -- we're not objecting to it, even now, but our position is, if you're going to take that position and you were going to be the arbiter of what's relevant and not, and commit to producing all the documents that are going to be used in the case, you should actually do that, and you're going to be held to that.

Now, in the fourth brief, at the very end of summary judgment, we get 500 pages of documents that were never produced before. And we object to the use of those documents under Rule 37, and we think that those documents should be stricken.

THE COURT: Okay.

MR. SAMAY: And if your Honor is inclined to consider the documents at all, we would just ask, in the alternative, for a chance to respond to those documents in a surreply.

THE COURT: Tell me what these documents are.

MR. SAMAY: Okay. There are copyright assignments - for instance, with respect to Willie Nelson songs that weren't produced, asset purchase agreements; administration agreements with Black Rose; coadministration agreements with Brother Gregg Allman, and estate documents.

THE COURT: Brother Gregg Allman?

MR. SAMAY: Gregg Allman.

MR. DICKSTEIN: Of the Allman Brothers.

MR. SAMAY: He's usually referred to as Brother Gregg.

THE COURT: Oh, okay.

MR. SLOTNICK: Don't know him that well.

MR. SAMAY: Me neither, but I've seen him a few times.

THE COURT: Okay. So is it the case that in establishing the chain of title for these various songs, that there were in fact gaps?

MR. SAMAY: Yes, that's our contention.

THE COURT: Okay.

Mr. -- you can remain seated.

MR. DICKSTEIN: Thank you.

THE COURT: But please speak directly into the microphone.

MR. DICKSTEIN: Yes. Thank you.

Your Honor, it's not correct to say that these are wholly new documents that were produced on the fly. Let's get into a little bit of the detail of what they are. There was a mention of two administration agreements --

THE COURT: Right.

MR. DICKSTEIN: -- with Black Rose. And I think one of the members of the Allman Brothers band, the same document was produced during discovery in unsigned form, and it was subject of deposition testimony. The defendants, in opposition to our summary judgment, they pointed out what they are contend are gaps or holes in, I think, 77 of the musical works that we're suing on. We then looked at that -- and this was the first time they raised that issue at any point during the case, as to specific challenges to our chain of title we looked at that -- and said, okay, you're right, we produced an unsigned copy, here's a signed copy, it's identical otherwise essentially.

There was a reference to a copyright assignment. The assignment involving a Willie Nelson song, the assignment itself was produced during discovery. We deliberately left out one page that referenced the specific song. And so we said, you know, here it is, we produced that with our reply materials.

There was a reference to an asset purchase agreement.

The underlying copyrighted assignment related to that transaction was produced during discovery. Again, in opposition to summary judgment, the defendants said, well, wait a minute, the corporate parent didn't sign off on this. And we said, okay, well, here's the asset purchase agreement to show, yes, in fact, they did.

There were a number of trusts and estate documents related to the estates of composers Richard Rodgers and Oscar Hammerstein II. The vast majority of those, particularly related to Richard Rodgers, were actually produced during discovery. I handed those materials to Mr. Samay just before we began. We simply pointed that out in our reply replay, and said, hey, we have these documents, they show the rather unremarkable fact that Richard Rodgers' interests in these certain compositions were transferred to the Richard Rodgers family trust. That was one of the issues that the defendants raised in their opposition papers. So we supplied that to show, no, the chain is complete and publisher plaintiffs do own these copyrights.

So there's no basis to preclude these documents here, your Honor. Rule 37(c) says that preclusion is not appropriate where it's either substantially justified or harmless, the timing of the production. I would say it's both here. First of all, as I said, as I was just mentioning, many of these documents were actually produced during discovery in

substantially similar form.

It's also proper, your Honor, to respond to arguments that the opposing side raises for the first time in opposition. And that's what we did here. This is the first time that any of these chain-of-title challenges were raised at all during the case.

THE COURT: Let me ask you: Is there agreement as to what the chain of title is, or is that hotly disputed?

MR. DICKSTEIN: We thought it was pretty clear but, unfortunately, it does seem to be disputed, as to, I think it's 77 of the approximately 200 songs at issue.

THE COURT: Because of these gaps?

MR. DICKSTEIN: The alleged gaps, yes, your Honor.

THE COURT: But apart from that, there is no dispute as to how the works traveled?

MR. DICKSTEIN: I think that's right, your Honor. We don't understand the defendants to be arguing, oh, no, somebody else owns these --

THE COURT: Okay.

MR. DICKSTEIN: -- copyrights, they're just simply -- and they follow the transfer from one entity to another, they're simply saying, oh, this step is missing and we have supplied the evidence that shows there are no gaps.

THE COURT: And now there are no gaps with the production of these documents?

MR. DICKSTEIN: That's correct.

THE COURT: Or there should be no --

MR. DICKSTEIN: I should also add, as your Honor may be aware, in our letter responding to defendants' premotion conference letter, we also are seeking leave to submit additional documents which we located. Again, after defendants raised this in their October 19 summary judgment opposition papers, there were certain documents that our clients actually did not have that responded to some of those issues, and so we went to the Copyright Office, we obtained documents that are publicly recorded at the Copyright Office, certificates of corporate mergers and name changes, that we obtained from the New York Department of State, and I think one copyright assignment from a third party that owned one of these works decades ago, I believe.

So, we obtained those from third parties when we saw the challenge that the defendants were raising, and we would have liked to put them in with our November 9 reply papers. We got it less than 20 days after that. We submitted that with our November 28 letter. We're seeking leave to supplement the record with those additional chain of title documents. And with that, we believe the chain of title is complete.

THE COURT: And that's a separate motion?

MR. DICKSTEIN: Correct.

THE COURT: Okay.

Mr. Samay?

MR. SAMAY: We would oppose the separate motion to produce even more documents at the close of discovery. There is one other issue that we would like to strike or not have the Court consider. A new argument was raised for the first time, again, in the last brief in this summary judgment briefing. It's an argument that plaintiffs are making, that because defendants don't own the copyrights themselves, that we can't challenge the ownership. It's an argument that was never raised earlier. It's an argument that we think has no legal merit, we actually think it's kind of silly. If that was actually the law, then you could never have a challenge of a change of title, you could never have a challenge to a ownership of a copyright, and plaintiffs would be permitted to say they owned things that they didn't own and nobody could challenge it.

We don't think the argument should be considered, and if it is considered, we would just like the opportunity to point out legal precedent in a surreply brief, to debunk that new argument.

THE COURT: Mr. Dickstein?

MR. DICKSTEIN: Your Honor, we raised that argument when they first challenged chain of title in their opposition papers. And perhaps because of the brevity of our reply, given the page limits, we didn't fully explain the argument as well

as we could have. We're not arguing that someone can come in to court and say, aha, I own this copyright, without any evidence. That's in the nature of selling you the Brooklyn Bridge. That's not what we're trying to do here.

The argument, I think, to put a finer point on it, is, where there is a chain, that there was a transfer from initially the songwriter who owns the copyright at inception through various publishing entities and ultimately to the plaintiffs, the defendants don't have standing to challenge the scope of those assignments. So, once we've filled the gaps, the alleged gaps, which we believe we have now, your Honor, the defendants don't have standing to say, ah, well the scope of this assignment is limited to X rights with respect to the song.

Where there's no dispute between the grantor and the grantee -- and the Second Circuit has said this in a case we cite in our letter -- a third-party alleged infringer doesn't have standing to say, ah, well, maybe there was a limited scope of assignment between the grantor and grantee where there's no dispute between them.

I would also submit, your Honor, given that we think now the record is complete as to chain of title, the standing issue is arguably moot, so I think your Honor could decide this on the merits of the chain of title.

THE COURT: So you're no longer challenging the

standing?

MR. DICKSTEIN: Insofar as they make an argument that a particular transfer where there is evidence of a transfer didn't include all but the sufficient exclusive rights to the composition where there's no dispute between the transferor and transferee, I would still contend that they don't have standing.

THE COURT: Okay.

This is what I'm going to do with respect to this issue: I'm not going to preclude the documents, but I am going to allow the defendants to submit a surreply. Plaintiffs have acknowledged that some of the documents that were recently produced, a couple were not signed, not fully executed copies, and another one was missing a page, and, obviously, these are relevant documents. So, based on that, I think it would be fair to grant the defense an opportunity to respond to them.

And, Mr. Samay, in that surreply, you can also address the issue of standing if you wish.

MR. SAMAY: Thank you, your Honor.

THE COURT: Okay.

Anything else?

MR. DICKSTEIN: No, your Honor.

THE COURT: Okay. We are adjourned.

MR. SLOTNICK: Thank you, your Honor.

MR. DICKSTEIN: Thank you.

THE COURT: Happy holidays to you.

MR. SLOTNICK: You too.

MR. SAMAY: Have a great holiday.

THE COURT: Oh. When?

MR. SAMAY: I hate to commit to things especially over the holidays, that I'm not writing.

THE COURT: End of January?

MR. SAMAY: It will be before that, but that will be the cutoff.

THE COURT: Okay.

MR. SAMAY: Sure.

THE COURT: January 31.

MR. SAMAY: Thank you, your Honor.

MR. DICKSTEIN: Thank you, your Honor.

* * *